IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANOFI-AVENTIS U.S. LLC,<br>55 Corporate Drive<br>Bridgewater, NJ 08807<br><br>   *Plaintiff*,<br><br> v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br>200 Independence Avenue, SW<br>Washington, DC 20201<br><br>HEALTH RESOURCES AND SERVICES ADMINISTRATION,<br>5600 Fishers Lane<br>Rockville, MD 20857<br><br>   *Defendants*. | Civil Action No. 24-1603<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Sanofi-Aventis U.S. LLC ("Sanofi"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1. Sanofi brings this action under the Freedom of Information Act (FOIA) to enjoin the Health Resources and Services Administration (HRSA), an agency within the Department of Health and Human Services (HHS), from concealing evidence of its ongoing refusal to enforce the 340B statute's prohibition on diverting 340B-priced drugs to persons who are not the covered entity's patient.

2. For years, HRSA has been withholding contracts between 340B covered entities and outside pharmacies that implicate covered entities' compliance with the

340B statute and HHS guidance. On information and belief, nothing in those contracts provides for covered entities to retain title to 340B-priced drugs shipped to contract pharmacies, contrary to the statute. But as the D.C. Circuit recently explained, under HRSA's own guidance, covered entities "must retain title to the drugs" shipped to contract pharmacies. *Novartis Pharms. Corp. v. Johnson*, No. 21-5299, 2024 WL 2279829, at *2 (D.C. Cir. May 21, 2024).

3. Despite knowing all of this, HRSA appears to have turned a blind eye to systemic violations of the 340B statute that have caused the 340B Program to spiral out of control. *Id.* On information and belief, HRSA has never sanctioned a covered entity for not maintaining title over 340B drugs shipped to a contract pharmacy. Nor does HRSA appear to have any interest in investigating covered entities' diversion of 340B drugs to contract pharmacies.

4. Indeed, HRSA *only* invoked FOIA Exemption 4 to withhold the substance of the pharmacy contracts. Its rationale is that those contracts contain confidentiality clauses. On this basis, HRSA withheld the pharmacy contracts in full without attempting to establish that the contracts contain confidential commercial information or even trying to segregate the purportedly exempt information from the nonexempt.

5. But the responsive information in the pharmacy contracts is not confidential commercial information under FOIA Exemption 4. Sanofi is not seeking the financial terms in the pharmacy contracts or, for that matter, even the *identities*

of the contracting parties. It seeks only the portions of those contracts that address compliance with applicable law—including who retains title to 340B-priced drugs.

6. Moreover, HHS's general counsel eliminated any expectation that the pharmacy contracts would remain confidential when he issued his Advisory Opinion on Contract Pharmacies expressly based on the twin premises that covered entities maintain title over 340B-priced drugs shipped to contract pharmacies and that contract pharmacies act as agents of a covered entity. In light of that disclosure, HRSA cannot plausibly argue that the pharmacy contracts—which will either support or refute the general counsel's assertions—are confidential.

7. The Court should order HRSA to disclose the pharmacy contracts it is unlawfully concealing because FOIA Exemption 4 does not apply.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

9. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

10. This Court has the authority to grant declaratory and injunctive relief under FOIA, the Declaratory Judgment Act, the Administrative Procedure Act, and this Court's inherent equitable powers. 28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 702, 706; 5 U.S.C. § 552(a)(4)(B).

11. Sanofi is deemed to have constructively exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i) because HRSA has not complied with the

applicable time-limit provisions of FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(ii) (20 days to adjudicate an administrative appeal).

## PARTIES

12. Plaintiff Sanofi is a global healthcare leader that produces prescription medicines and other consumer health products.

13. Defendant HHS is an agency of the United States government.

14. Defendant HRSA is an HHS agency.

## STATEMENT OF FACTS

**A.  340B Program**

15. Section 340B of the Public Health Service Act, 42 U.S.C. § 256b, requires drug manufacturers participating in the 340B Program to offer "certain drugs at discounted prices to select healthcare providers." *Novartis*, 2024 WL 2279829, at *1. These providers are known as "covered entities," 42 U.S.C. § 256b(a)(1), and they "benefit through insurance reimbursements that exceed the marked-down cost of the drugs," *Novartis*, 2024 WL 2279829, at *1.

16. To distribute 340B-priced drugs to patients, covered entities often contract with outside pharmacies. In 1996, HRSA issued guidance stating that each covered entity may contract with one outside pharmacy. Then, in 2010, HRSA issued new guidance opining that each covered entity may contract with an unlimited number of such pharmacies.

17. HRSA's 2010 guidance "prompted a significant expansion in the section 340B program." *Id.* at *3. And as the use of contract pharmacies skyrocketed, so too did waste and abuse.

18. One form of abuse is called diversion, which occurs when covered entities "resell or otherwise transfer the drug to a person who is not a patient of the entity." 42 U.S.C. § 256b(a)(5)(B). The 340B statute prohibits diversion. *Id.*

19. Covered entities violate Section 340B's prohibition on diversion by transferring title over 340B-priced drugs to contract pharmacies. Indeed, HRSA has stated that maintaining title to drugs is an "essential element[]" of covered entities' compliance with the prohibition against diversion. *Notice Regarding 340B Drug Pricing Program-Contract Pharmacy Services*, 75 Fed. Reg. 10,272, 10,277 (March 5, 2010).

20. Arrangements for delivery of 340B-priced drugs to contract pharmacies increase the risk of diversion because most pharmacies do not keep separate inventories of 340B drugs, but instead "fill prescriptions from inventories that intermingle discounted and non-discounted drugs." *Novartis*, 2024 WL 2279829, at *3.

21. "Only after dispensing the drugs do these pharmacies attempt to discern whether individual customers were patients of covered entities—in other words, whether individual prescriptions were eligible for the discount." *Id.*

22. And pharmacies often overstate the number of discount-eligible prescriptions. For one, pharmacies generally "outsource this determination to third-

5

party administrators, who often receive a larger fee for every prescription deemed eligible for the discount." *Id.* For another, pharmacies may "rely on manipulable algorithms to code whether prescriptions warrant the discount." *Id.*

23. After categorizing certain prescriptions as eligible for the discount, "the pharmacy places an order to replenish its section 340B purchases." *Id.* "The covered entity, the pharmacy, and the third-party administrator often divvy up the spread between the discounted price and the higher insurance reimbursement rate." *Id.* For this reason, "[e]ach of these actors ... has a financial incentive to catalog as many prescriptions as possible as eligible for the discount." *Id.*

24. This method for distributing prescription drugs—known as the replenishment model—is a main driver of waste and abuse in the 340B Program.

25. Despite its view that covered entities may rely on contract pharmacies for distribution, HRSA has affirmed—and reaffirmed—that covered entities must retain title to the drugs shipped to pharmacies. HRSA's 1996 guidance, for example, "stressed that a covered entity, in directing shipments to its contract pharmacy, must retain title to the drugs." *Novartis*, 2024 WL 2279829, at *2; *Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services*, 61 Fed. Reg. 43,549, 43,553 (August 23, 1996) (observing that the covered entity must "retain title" of drugs shipped to contract pharmacies and thus "retains responsibility for the drug[s]"). And its 2010 guidance "reiterated ... that each covered entity must maintain title to and responsibility for the drugs." *Novartis*, 2024 WL 2279829, at

\*2; 75 Fed. Reg. at 10,277 (observing that maintaining title is an "essential element[]" of compliance for covered entities).

26. Despite these words on paper, HRSA appears to have done nothing to enforce them or the 340B statute's prohibition on diversion.

27. On information and belief, it is general industry practice that covered entities do *not* maintain title over 340B-priced drugs shipped to contract pharmacies using the replenishment model.  Rather, on information and belief, it is general industry practice for contract pharmacies to obtain title to 340B-priced drugs.

28. Moreover, on information and belief, it is general industry practice for contract pharmacies to act as independent contractors when they receive 340B-priced drugs.  On information and belief, contract pharmacies do not act as agents of covered entities when they receive 340B-priced drugs.

29. On information and belief, HRSA has never sanctioned a covered entity for not maintaining title to 340B-priced drugs shipped to contract pharmacies.

30. Furthermore, HRSA is not currently investigating any covered entities for not maintaining title to 340B-priced drugs shipped to contract pharmacies.

**B.     HRSA's Advisory Opinion and Enforcement Letter to Sanofi**

31. Sanofi sells medicines subject to 340B-discounted prices.

32. In 2020, Sanofi limited the distribution of 340B-priced drugs to contract pharmacies to address the explosive growth of such pharmacies in the 340B Program and resulting, impermissible duplicate discounts.

33. In response to these restrictions adopted by Sanofi, as well as similar restrictions adopted by other pharmaceutical manufacturers, "HHS issued an advisory opinion stating that section 340B requires manufacturers to deliver covered drugs to any contract pharmacies with which a covered entity chooses to partner." *Novartis*, 2024 WL 2279829, at *4.

34. In HHS's view, covered entities do not violate the 340B statute's prohibition on diversion when they direct pharmaceutical manufacturers to deliver 340B-priced drugs to contract pharmacies, because contract pharmacies act as agents of a covered entity, and because covered entities maintain title over 340B-priced drugs shipped to contract pharmacies. *See* Advisory Opinion 20-06 at 6.

35. HRSA then sent enforcement letters to Sanofi and other manufacturers, including Novartis and United Therapeutics, concluding that the manufacturers had a statutory duty under Section 340B to deliver 340B-priced drugs to contract pharmacies. HRSA ordered the manufacturers to deliver their 340B-priced drugs to all contract pharmacies without any restrictions.

36. Sanofi and other manufacturers challenged HRSA's enforcement letters in separate suits. The Third Circuit vacated HRSA's enforcement letter to Sanofi and ordered injunctive relief prohibiting the government from enforcing its position on contract pharmacies. *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696 (3d Cir. 2023). The D.C. Circuit "agree[d] entirely" with the Third Circuit in awarding similar relief to Novartis and United Therapeutics. *Novartis*, 2024 WL 2279829, at *6.

### C. Sanofi's FOIA Request

37. On July 21, 2021, Sanofi submitted a FOIA request to HRSA seeking, among other things, all records "reflecting whether (a) contract pharmacies act as agents of covered entities, and (b) covered entities maintain title to drugs shipped to contract pharmacies." Exhibit A.

38. Sanofi's request sought information only regarding the agency relationships between contract pharmacies and covered entities and which party maintains title over the drugs. The request did not seek the pricing terms in the contracts between covered entities and pharmacies or even the identities of the contracting parties. Sanofi sought this information to support or refute HHS's assertions in the Advisory Opinion and to better understand whether covered entities' arrangements with contract pharmacies comply with the 340B statute.

39. With this information, Sanofi would be able to expose HRSA's failure to enforce the 340B statute's prohibition on diversion, more effectively defend itself against covered entities' claims alleging violations of the 340B statute, and consider bringing diversion claims against covered entities.

40. On July 22, 2021, HRSA acknowledged receiving Sanofi's FOIA request and assigned #21F218 to it.

41. On October 19, 2021, a HRSA representative responded that "there are hundreds of contract pharmacies, and each contract will have to be sent to each respective pharmacy for submitter review. This process will take several months to complete. . . . If you would still like to see contracts, would you be okay with receiving

9

one or two of them, instead of all? My assumption is that the contracts will look fairly uniform except for the names/identifying information unique to each pharmacy."

42. Sanofi responded the same day that it "does not agree to waive its request for contracts that are responsive to the request; however, we would appreciate receiving your production of contracts on a rolling basis. After reviewing 1-2 contracts, we will reconsider whether to waive production of additional contracts that are responsive to the request."

43. On December 8, 2021, HRSA responded that it had identified "43 pages of pharmacy contracts responsive to" Sanofi's request, but that it was "withholding those pages in full pursuant to Exemption 4." Exhibit B. HRSA acknowledged Sanofi's agreement "to receive two pharmacy contracts as an initial offering, while preserving [its] request to receive the remainder of the contracts at a later date." *Id.*

44. According to HRSA, no portion of the pharmacy contracts can be disclosed because the "withheld information includes product pricing and other commercial or financial information," and "the submitters do not customarily release this information to the public." *Id.*

45. HRSA later clarified via email that withholding these contracts in full was appropriate "because the contracts had clauses that prohibited release of any portions of the contracts except to the parties to the contracts."

46. HRSA invoked only FOIA Exemption 4 to withhold the substantive portions of the pharmacy contracts. Although HRSA invoked Exemption 6 to withhold names, emails addresses, and personal cell phone numbers, HRSA did not

10

invoke any other exemptions. HRSA would have invoked FOIA Exemption 7 if any of the pharmacy contracts were part of an ongoing investigation into covered entities' compliance with Section 340B.

47. Accordingly, HRSA is not currently investigating any covered entity for not maintaining title over 340B-priced drugs shipped to contract pharmacies, and none of the pharmacy contracts being withheld are part of an ongoing law enforcement investigation.

48. On information and belief, nothing in the 43 pages withheld by HRSA demonstrates that the covered entity maintains title of 340B-priced drugs shipped to contract pharmacies.

49. On information and belief, nothing in the 43 pages withheld by HRSA demonstrates that the contract pharmacy acts as an agent of the covered entity.

50. Sanofi timely administratively appealed HRSA's decision to invoke FOIA Exemption 4 on January 4, 2022. Exhibit C. In the appeal, Sanofi argued that HRSA's decision to withhold the pharmacy contracts in full should be reversed for three reasons. First, the requested portions of the pharmacy contracts do not contain commercial or financial information. Second, the requested portions of the pharmacy contracts do not contain confidential information regardless of any purported contract clause prohibiting the parties from disclosing the contracts. Third, HRSA must segregate and disclose the responsive, non-exempt information in the pharmacy contracts (such as the agency relationship of the parties and which party maintains title over the drugs) from any exempt information (such as the pricing terms and the

identities of the contracting parties). Sanofi did not challenge HRSA's reliance on Exemption 6 to withhold personal information for privacy reasons.

51. HRSA has not decided Sanofi's appeal in nearly two-and-a-half years.

52. Because HRSA did not timely respond to Sanofi's appeal, Sanofi is deemed to have exhausted its administrative remedies. 5 U.S.C. § 552(a)(6)(A)(ii) (setting time for response to an appeal at twenty days), (C)(i) (deeming administrative remedies exhausted).

53. Sanofi has a statutory right to the withheld records and is now entitled to judicial action enjoining HRSA from continuing to improperly withhold records and ordering the production of records improperly withheld.

## CLAIM FOR RELIEF

### Violation of Freedom of Information Act, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Records

54. Sanofi incorporates by reference the allegations contained in the previous paragraphs as though set forth fully herein.

55. FOIA authorizes a court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

56. Sanofi properly requested records within the possession and control of HRSA.

57. HRSA is an agency subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

58. Sanofi exhausted all of its administrative remedies under FOIA and HHS regulations.

59. HRSA is wrongfully withholding non-exempt agency records because the pharmacy contracts do not contain "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4), particularly because the identities of the contracting parties and any product pricing information may be redacted.

60. HRSA failed to establish that the pharmacy contracts contain "commercial" information within the meaning of Exemption 4.

61. Information regarding an unidentified covered entity's compliance with applicable law—in particular, whether a covered entity maintains title to 340B-priced drugs shipped to contract pharmacies as required by Section 340B and HRSA guidance—is not "commercial" in and of itself.  Nor is the legal nature of the business relationship between two anonymous contracting parties commercial in and of itself.

62. HHS waived any argument that the pharmacy contracts are "commercial or financial information [that is] privileged or confidential" when its general counsel asserted in the Advisory Opinion that contract pharmacies act as agents of covered entities and that covered entities maintain title over 340B-priced drugs shipped to contract pharmacies, particularly because the pharmacy contracts reflect a general industry practice among pharmacies using the replenishment model.

63. HRSA also failed to establish that the pharmacy contracts contain "confidential" information within the meaning of Exemption 4.

64. HRSA failed to demonstrate that it assured covered entities that the pharmacy contracts would remain confidential.

65. On information and belief, HRSA never provided any express or implied assurance that the pharmacy contracts would remain confidential, particularly because the responsive information relates to covered entities' compliance with applicable law.

66. HHS withdrew any prior assurance of confidentiality when its general counsel asserted in the Advisory Opinion that contract pharmacies act as agents of a covered entity and that covered entities maintain title over 340B-priced drugs shipped to contract pharmacies.

67. HRSA's rationale for withholding the pharmacy contracts—confidentiality clauses—is insufficient to establish that the contracts are exempt under Exemption 4.

68. Even assuming Exemption 4 applies to some portions of the pharmacy contracts, HRSA failed to segregate the exempt material and disclose the non-exempt material, as required by both FOIA and HHS's implementing regulations. *See* 5 U.S.C. § 552(a)(8)(A)(ii)(II), (b)(9); 45 C.F.R. §§ 5.2(a), 5.28(c). HRSA's failure to provide all non-exempt responsive records violates FOIA and the agency's own regulations. HRSA also failed to provide a detailed justification for its failure to release all reasonably segregable information.

69. Sanofi is therefore entitled to declaratory and injunctive relief requiring HRSA to segregate and promptly produce the nonexempt portions of all pharmacy contracts and to provide an index identifying all pharmacy contracts being withheld.

## PRAYER FOR RELIEF

Wherefore, Sanofi prays for the following relief:

1. A declaration that Sanofi is entitled to disclosure of the pharmacy contracts;

2. A declaration that HRSA lacked a legal basis to withhold the pharmacy contracts under FOIA Exemption 4;

3. An order requiring HRSA to segregate and promptly produce the nonexempt portions of the pharmacy contracts;

4. An injunction prohibiting HRSA from withholding the pharmacy contracts;

5. An order requiring HRSA to promptly produce an index identifying all pharmacy contracts being withheld;

6. That the Court retain jurisdiction of this action to ensure no pharmacy contracts are wrongfully withheld;

7. An award of all costs and attorneys' fees pursuant to any applicable statute or authority, including 5 U.S.C. § 552(a)(4)(E); and

8. Any other relief this Court deems just and proper.

Dated: May 31, 2024

Respectfully submitted,

*s/ Brett A. Shumate*

Toni-Ann Citera (application *pro hac vice* forthcoming)
Rajeev Muttreja (application *pro hac vice* forthcoming)
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Brett A. Shumate (D.C. Bar No. 974673)
Megan Lacy Owen (D.C. Bar No. 1007688)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

*Counsel for Plaintiff*

16