## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SANOFI-AVENTIS U.S. LLC,

      Plaintiff,

     v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

      Defendants.

Civil Action No. 1:24-cv-1603 (DLF)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

I.    THE 340B PROGRAM ................................................................................ 2

II.   THE ADVISORY OPINION AND OTHER PUBLIC DISCLOSURES ............. 4

III.  SANOFI'S FOIA REQUEST ........................................................................ 5

STANDARD OF REVIEW ..................................................................................... 8

ARGUMENT ........................................................................................................ 9

I.    HRSA MUST DISCLOSE THE PHARMACY CONTRACTS. ........................... 9

    A.   Sanofi's FOIA Request Does Not Seek Commercial Information. ............... 9

    B.   Sanofi's FOIA Request Does Not Seek Confidential Information. ............. 11

    C.   The Government Waived Reliance on Exemption 4. .................................. 14

    D.   The Government Cannot Show Reasonably Foreseeable Harm From
       Disclosing the Pharmacy Contracts. .......................................................... 15

II.   HRSA FAILED TO SEGREGATE RESPONSIVE PORTIONS OF THE
    CONTRACTS. ............................................................................................... 16

III.  THE COURT SHOULD AWARD FULL RELIEF AND RETAIN
    JURISDICTION. .......................................................................................... 17

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Afshar v. U.S. Dep't of State*,
   702 F.2d 1125 (D.C. Cir. 1983)............................................................ 14

*Brayton v. Off. of the U.S. Trade Representative*,
   641 F.3d 521 (D.C. Cir. 2011) ................................................................ 8

*Campbell v. U.S. Dep't of Justice*,
   164 F.3d 20 (D.C. Cir. 1998) ................................................................ 12

\* *Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Justice*,
   58 F.4th 1255 (D.C. Cir. 2023)........................................................*passim*

*Clemente v. FBI*,
   71 F. Supp. 3d 262 (D.D.C. 2014) ........................................................ 20

*Colbert v. FBI*,
   No. 16-1790 (DLF), 2018 WL 6299966 (D.D.C. Sept. 3, 2018) ............................ 20

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999) ........................................................ 14, 15

*Crooker v. U.S. State Dep't*,
   628 F.2d 9 (D.C. Cir. 1980) (per curiam) ................................................ 18

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
   436 F. Supp. 3d 90 (D.D.C. 2019) ........................................................ 12

*Davis v. U.S. Dep't of Justice*,
   968 F.2d 1276 (D.C. Cir. 1992)............................................................ 14

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
   117 F. Supp. 3d 46 (D.D.C. 2015) ........................................................ 13

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ............................................................ 15

\* *Food Mktg. Inst. v. Argus Leader Media*,
   588 U.S. 427 (2019) ....................................................................................... 11, 13

*Gandhi v. Ctrs. for Medicare & Medicaid Servs.*,
   665 F. Supp. 3d 49 (D.D.C. 2023) ............................................................... 17

*Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   525 F. Supp. 3d 90 (D.D.C. 2021) ............................................................... 16

*Nat'l Bus. Aviation Ass'n, Inc. v. FAA*,
   686 F. Supp. 2d 80 (D.D.C. 2010) ............................................................... 16

*Northwestern Univ. v. Dep't of Agric.*,
   403 F. Supp. 2d 83 (D.D.C. 2005) ........................................................... 18, 19

*Novartis Pharms. Corp. v. Johnson*,
   102 F.4th 452 (D.C. Cir. 2024).............................................................*passim*

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982) (per curiam) .......................................... 19

*Pike v. U.S. Dep't of Justice*,
   306 F. Supp. 3d 400 (D.D.C. 2016) ........................................................... 15

*Pub. Citizen Health Rsch. Grp. v. FDA*,
   704 F.2d 1280 (D.C. Cir. 1983)..................................................................... 9

*Sanofi Aventis U.S. LLC v. HHS*,
   58 F.4th 696 (3d Cir. 2023) ........................................................................ 5

*Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*,
   698 F. Supp. 3d 82 (D.D.C. 2023) .......................................................... 9, 15

*Summers v. Dep't of Justice*,
   140 F.3d 1077 (D.C. Cir. 1998)................................................................... 18

*U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*,
   592 U.S. 261 (2021) ..................................................................................... 8

*Valfells v. CIA*,
   717 F. Supp. 2d 110 (D.D.C. 2010) ........................................................... 17

*Wolf v. CIA,*
    473 F.3d 370 (D.C. Cir. 2007) ................................................................................ 15

STATUTES

* 5 U.S.C. § 552 ........................................................................................*passim*

28 U.S.C. § 2201 .................................................................................... 18

42 U.S.C. § 256b ....................................................................................*passim*

OTHER AUTHORITIES

42 C.F.R. § 10.21 ................................................................................... 14

45 C.F.R. § 5.2 ..................................................................................... 17

45 C.F.R. § 5.28 ................................................................................... 17

*340B Drug Pricing Program; Administrative Dispute Resolution*
    *Regulation*, 89 Fed. Reg. 28,643 (Apr. 19, 2024) .................................................... 6

Fed. R. Civ. P. 56 ................................................................................. 8

*Notice Regarding 340B Drug Pricing Program—Contract Pharmacy*
    *Services*, 75 Fed. Reg. 10,272 (Mar. 5, 2010) ........................................................ 3

*Notice Regarding Section 602 of the Veterans Health Care Act of 1992;*
    *Contract Pharmacy Services*, 61 Fed. Reg. 43,549 (Aug. 23, 1996) ....................... 3

S. Rep. No. 89-813 (1965) ........................................................................ 10

**INTRODUCTION**

For years, the government has represented to the public—and this Court—
that covered entities participating in the 340B Program maintain title over
340B-priced drugs shipped to contract pharmacies and that those pharmacies act as
agents of covered entities. These representations were central to the Department of
Health and Human Services' ("HHS") 2020 Advisory Opinion on Contract Pharmacies
Under the 340B Program, and to the agency's defense before this Court of violation
letters the Health Resources and Services Administration ("HRSA") sent to Novartis
and United Therapeutics. Yet the government has steadfastly refused to disclose any
factual support for these representations.

This Freedom of Information Act ("FOIA") lawsuit seeks to compel the
government to disclose information that will either support or refute the
government's representations. Sanofi's FOIA request is narrow: It seeks anonymized
contract terms between covered entities and third-party contract pharmacies that
reflect (1) whether contract pharmacies act as agents of covered entities, and (2)
whether covered entities maintain title over 340B-priced drugs shipped to contract
pharmacies. Sanofi expects that this responsive information will both refute the
government's representations and demonstrate that the government has been
withholding evidence of covered entities' systemic diversion of 340B-priced drugs in
violation of the 340B statute. *See* 42 U.S.C. § 256b(a)(5)(B). The government denies
these allegations, continuing to aver that its representations are supportable.

Yet the government insists that not a single word in hundreds of these contracts can be released because they contain "commercial" and "confidential" information under FOIA Exemption 4. In doing so, the government has staked out an extraordinary position: Federal agencies can use information as both a shield and a sword, representing to the public—and to this Court—what the pharmacy contracts say, but never having to show the receipts, because FOIA supposedly shields those contracts from public disclosure. That makes no sense, and certainly cannot justify blanket confidentiality, as the government maintains. Because FOIA Exemption 4 does not apply, this Court should order HRSA to release all responsive records and retain jurisdiction until the agency releases all pharmacy contracts in its possession.

## BACKGROUND

### I. The 340B Program

Congress created the 340B Program in Section 340B of the Public Health Service Act, which "requires drug manufactures to sell certain drugs at discounted prices to select healthcare providers … [a]s a condition of participating in Medicare Part B and Medicaid." *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 455 (D.C. Cir. 2024) (citing 42 U.S.C. § 256b). These providers are known as "covered entities," 42 U.S.C. § 256b(a)(1), and they "benefit through insurance reimbursements that exceed the marked-down cost of the drugs," *Novartis*, 102 F.4th at 455.

To distribute 340B-priced drugs to their patients, covered entities "often contract with outside pharmacies." *Id.* For decades, HRSA has demanded "that a covered entity, in directing shipments to its contract pharmacy, must retain title to

the drugs." *Id.* at 457 (citing *Notice Regarding Section 602 of the Veterans Health Care Act of 1992; Contract Pharmacy Services*, 61 Fed. Reg. 43,549, 43,553 (Aug. 23, 1996)); *see also Notice Regarding 340B Drug Pricing Program—Contract Pharmacy Services*, 75 Fed. Reg. 10,272, 10,277 (Mar. 5, 2010) (noting that it is an "essential element[ ] … in contract pharmacy arrangements" that "[t]he covered entity … maintain title to the drug").  HRSA has insisted that covered entities maintain title because the statute prohibits diversion of the drugs to anyone except a patient: "With respect to any covered outpatient drug that is subject to an agreement under this subsection, a covered entity shall not resell or otherwise transfer the drug to a person who is not a patient of the entity." 42 U.S.C. § 256b(a)(5)(B).

Over the years, the number of contract pharmacies participating in the 340B Program has skyrocketed.  *Novartis*, 102 F.4th at 457.  That growth, in turn, has spawned higher levels of waste and abuse—including diversion.  Diversion is a serious problem for drug manufacturers like Sanofi, as it allows covered entities to inflate the number of drugs that manufacturers must replenish at discounted rates.

HRSA has long recognized that covered entities violate Section 340B's prohibition on diversion when they transfer title over 340B drugs to contract pharmacies.  *See* 61 Fed. Reg. at 43,553; 75 Fed. Reg. at 10,277.  Yet there is no evidence that HRSA has ever sanctioned—or even investigated—a covered entity for such transfers.  In part because of HRSA's failure to address the waste and abuse at contract pharmacies, in 2020, Sanofi and other manufacturers enacted their own

measures to address waste and abuse caused by the constant flow of 340B drugs to contract pharmacies. *See Novartis*, 102 F.4th at 458.

## II.  The Advisory Opinion and Other Public Disclosures

HHS responded to manufacturers' policy initiatives by "issu[ing] an advisory opinion stating that section 340B requires manufacturers to deliver covered drugs to any contract pharmacies with which a covered entity chooses to partner."  *Id.* According to the Advisory Opinion, covered entities do not engage in diversion when they direct manufacturers to deliver 340B drugs to contract pharmacies, because (1) contract pharmacies act as agents of covered entities and (2) covered entities maintain title over drugs shipped to contract pharmacies.  Advisory Op. 20-06 on Contract Pharmacies Under the 340B Program, at 3, 6 (Dec. 30, 2020) (stating that covered entities and pharmacies "function as principal-agent" and that "the covered entity takes title" to the drugs), https://tinyurl.com/3hxtau7s.

The government has since reaffirmed this view.  In briefing before this Court, the government represented that a covered entity "maintains the title to the 340B drugs" shipped to "contract pharmacies," *Novartis Pharms. Corp. v. Espinoza*, 21-cv-1479 (DLF), Dkt. No. 13-1 at 15 (quoting testimony), and that "the relationship between these entities generally functions like a principal-agent relationship," *United Therapeutics Corp. v. Espinoza*, 21-cv-1686 (DLF), Dkt. No. 22 at 6 (citing the Advisory Opinion).[1]  In this suit as well, the agencies denied Sanofi's allegations that

---

[1] Elsewhere in the same briefing, the agencies hedged, asserting only that "covered entities generally maintain title to drugs delivered to their contract

covered entities do not maintain title over 340B drugs shipped to contract pharmacies and that these pharmacies act as independent contractors rather than as agents. *See* Answer ¶¶ 27–28, Dkt. No. 16.

## III. Sanofi's FOIA Request

To verify the government's representations in the Advisory Opinion, Sanofi submitted a FOIA request in July 2021 seeking, among other things, all records, including contracts between covered entities and outside pharmacies, "reflecting whether (a) contract pharmacies act as agents of covered entities, and (b) covered entities maintain title to drugs shipped to contract pharmacies." Ex. 1 at 2. The request did not ask HRSA to disclose any other contractual terms, such as price information. Nor did it even seek the identities of the contracting parties. Sanofi has at all times agreed that such information may properly be redacted.

The requested information, though limited, will either support or refute the government's representations in the Advisory Opinion and to this Court. It will also reveal whether HRSA has turned a blind eye to systemic violations of the 340B statute. It will further help Sanofi defend itself against covered entities' claims that it is illegally restricting the distribution of 340B drugs to contract pharmacies— claims that continue to pile up despite recent decisions from the Third and D.C. Circuits permitting such restrictions. *See Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th

---

pharmacies … *at least until they reach neutral inventory*." *Novartis*, 21-cv-1479, Dkt. No. 13-1 at 36–37 (emphasis added).

696 (3d Cir. 2023); *Novartis*, 102 F.4th 452.  Finally, the information will help Sanofi decide whether to bring its own diversion claims against covered entities.

In response to Sanofi's FOIA request, HRSA acknowledged that it has "hundreds" of contract pharmacy agreements, Ex. 3 at 2, which is not surprising because the agency regularly audits covered entities, *see 340B Drug Pricing Program; Administrative Dispute Resolution Regulation*, 89 Fed. Reg. 28,643, 28,644 (Apr. 19, 2024) ("On average, HRSA conducts 200 covered entity audits each fiscal year," which includes review of "contract pharmacy agreements.").  Although Sanofi did not "waive its request for contracts that are responsive to the request," Sanofi suggested that HRSA produce the "contracts on a rolling basis," starting with "1-2 contracts."  Ex. 3 at 1; *see also* Ex. 4 at 2 (HRSA denial letter) ("You also agreed to receive two pharmacy contracts as an initial offering, while preserving your request to receive the remainder of the contracts at a later date.").

In December 2021, HRSA denied Sanofi's FOIA request in full.  In doing so, the agency noted that it had identified an initial batch of "43 pages of pharmacy contracts responsive to" the request, but that it was "withholding those pages in full pursuant to [FOIA] Exemption 4," Ex. 4 at 2, which applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential," 5 U.S.C. § 552(b)(4).  HRSA reasoned that no portion of the pharmacy contracts could be disclosed because the "withheld information includes product pricing and other commercial or financial information," and "the submitters do not customarily release this information to the public." Ex. 4 at 2–3.  HRSA later clarified

that withholding these contracts was appropriate "because the contracts had clauses that prohibited the release of any portions of the contracts except to the parties to the contracts." Ex. 5 at 1. The agency also concluded that it was "reasonably foresee[able] that disclosure would harm an interest protected" by Exemption 4. Ex. 4 at 2. The agency did not invoke any other exemption to withhold the substantive portions of the contracts.

In January 2022, Sanofi filed an administrative appeal, arguing that the requested portions do not contain commercial or confidential information, and that disclosure would not cause commercial harm. Ex. 6. Sanofi also argued that HRSA must segregate the responsive, non-exempt information from any exempt information, and then disclose the former. Ex. 6.

To this day, HRSA has not responded to Sanofi's appeal—now over *two-and-a-half years* later. *See* 5 U.S.C. § 552(a)(6)(A)(ii) (requiring agency to respond to an appeal within 20 working days). This extreme delay has prejudiced Sanofi, because covered entities continue to challenge the contract-pharmacy restrictions imposed by Sanofi and other manufacturers.

Sanofi filed this suit on May 31, 2024, and the government answered on August 2, 2024. In its Complaint, Sanofi alleged that "it is general industry practice that covered entities do not maintain title over 340B-priced drugs shipped to contract pharmacies." Compl. ¶ 27, Dkt. No. 1. Sanofi further alleged that "it is general industry practice for contract pharmacies to act as independent contractors when they receive 340B-priced drugs" rather than "as agents of covered entities." *Id.* ¶ 28.

The government denied both allegations.  *See* Answer ¶¶ 27–28.  The government also denied Sanofi's allegations that "nothing in the 43 pages withheld by HRSA demonstrates that the covered entity maintains title of 340B-priced drugs shipped to contract pharmacies," and "that the contract pharmacy acts as an agent of the covered entity."  Compl. ¶¶ 48–49; Answer ¶¶ 48–49.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

FOIA requires "disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions."  *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021).  "These limited exceptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act."  *Citizens for Resp. & Ethics in Wash. (CREW) v. U.S. Dep't of Justice*, 58 F.4th 1255, 1261 (D.C. Cir. 2023) (cleaned up).  Exemption 4, like other FOIA exemptions, is "narrowly construed," and "[t]he agency bears the burden to justify nondisclosure" by providing "detailed and specific information demonstrating that material withheld is logically within the domain of Exemption 4."  *Id.* at 1261–62, 1269 (quotation marks omitted).  Moreover, the agency must show it "reasonably foresees that disclosure would harm an interest protected by [the] exemption."  5 U.S.C. § 552(a)(8)(A).

ARGUMENT

## I.   HRSA Must Disclose The Pharmacy Contracts.

HRSA has invoked only Exemption 4 to withhold the responsive portions of the pharmacy contracts.  That exemption shields from disclosure "trade secrets and commercial or financial information obtained from a person" that is "privileged or confidential."  5 U.S.C. § 552(b)(4).  Exemption 4 applies only to information that is both commercial *and* confidential.  *See CREW*, 58 F.4th at 1263; *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 118 (D.D.C. 2023).

HRSA's reliance on Exemption 4 fails at every turn.  The requested information—concerning unidentified covered entities' compliance with applicable law—is neither commercial nor confidential.  Indeed, the government confirmed as much by disclosing the same information to the public and this Court.  Those disclosures, moreover, constitute waiver of Exemption 4, and they defeat any claim that granting Sanofi's FOIA request would harm an interest protected by the exemption.  For each of these independent reasons, the Court should grant Sanofi's motion for summary judgment and compel release of the pharmacy contracts.

### A.   Sanofi's FOIA Request Does Not Seek Commercial Information.

"[N]ot every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4."  *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983).  Nor does Exemption 4 "cover all information the public disclosure of which could inflict commercial harm."  *CREW*, 58 F.4th at 1264.  To qualify as "commercial" information under Exemption 4, the

9

withheld "information must be commercial in and of itself, meaning it serves a commercial function or is of a commercial nature." *Id.* at 1263 (cleaned up).

This narrow scope reflects Congress's goal "to shield from public release intrinsically valuable business information." *Id.* (citing S. Rep. No. 89-813, at 9 (1965)). Accordingly, "Exemption 4 paradigmatically applies to records that a business owner customarily keeps private because they actually reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or that relate to the income-producing aspects of a business." *Id.* (cleaned up). As an example, the D.C. Circuit has held that Exemption 4 covers "a firm's data or reports on its commercial service or its product's favorable or unfavorable attributes." *Id.* at 1265 (citing cases). By contrast, the court has held that Exemption 4 does not cover the names of contractors who supply lethal agents for federal executions—even though disclosure could cause commercial harm to these contractors—because "the commercial consequences of disclosure are not on their own sufficient to" make information commercial. *Id.* at 1267. The upshot is this: Information is commercial under Exemption 4 only if "the nature of the information itself" "demonstrably pertains to the exchange of goods or services or the making of a profit." *Id.* at 1265.

The limited information Sanofi seeks here—anonymized contract terms reflecting the relationship between the contracting parties and which party maintains title over 340B-priced drugs—is not "commercial in and of itself." *Id.* at 1263. Unlike "sales statistics" or "customer lists" or "data on profits and losses," the requested information is not "intrinsically valuable business information" that

10

"demonstrably pertains to the exchange of goods or services or the making of a profit." *Id.* at 1263, 1265.  Rather, it is *legal* information that pertains to *unidentified* covered entities' compliance with applicable law.

Indeed, the requested information is much like the information the government has already publicly disclosed.  Without identifying any companies by name, the Advisory Opinion described the relationship between covered entities and contract pharmacies as one of "principal-agent," and it stated that covered entities "take[ ] title" to the drugs delivered to contract pharmacies.  Advisory Op. 20-06 at 3, 6.  The government later made the same representations to this Court—again without identifying a specific covered entity or pharmacy.  *See Novartis Pharms. Corp.*, 21-cv-1479 (DLF), Dkt. No. 13-1 at 15 (quoting testimony); *United Therapeutics Corp.*, 21-cv-1686 (DLF), Dkt. No. 22 at 6 (citing the Advisory Opinion); Answer ¶¶ 27–28, 48–49.  So too here, Sanofi seeks anonymized information regarding the agency relationship of the parties and which party maintains title over the drugs. Nothing more.  That information was not "commercial" when the government disclosed it.  And it is not "commercial" now.

## B.  Sanofi's FOIA Request Does Not Seek Confidential Information.

Moreover, Exemption 4 is inapplicable because the requested information is not "confidential."  Information is "confidential" under Exemption 4 only if it is "customarily and actually treated as private" by the submitter.  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).  Further, information that is otherwise confidential *may* lose that status if it is communicated to the government without

11

"some assurance that it will remain secret," *id.* at 434–35, though neither the Supreme Court nor the D.C. Circuit have definitively resolved whether such assurances are required, *see id.* at 435; *CREW*, 58 F.4th at 1269. In any event, the requested information flunks both conditions.

Start with the first (and mandatory) condition. In its denial letter, HRSA provided no evidence that covered entities and contract pharmacies "customarily and actually maintain in secrecy" the limited information requested by Sanofi. *CREW*, 58 F.4th at 1269. Instead, HRSA asserted only that "[t]he withheld information includes product pricing and other commercial or financial information" that "the submitters do not customarily release ... to the public." Ex. 4 at 2–3. But Sanofi does not seek product prices—it agrees that HRSA may redact such information—so any "confidentiality interest" in that information is "too narrow to cover all the withheld information." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 112 (D.D.C. 2019). And HRSA's conclusory statement that "the submitters do not customarily release" the requested information does not suffice to justify nondisclosure under Exemption 4. *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (agency does not meet its FOIA burden if its "claims are conclusory, merely reciting statutory standards"); *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 111 ("Conclusory statements by an agency official about what the agency official may believe about how a submitter customarily treats the information at issue are simply insufficient."). Indeed, HRSA's claim that the submitters do not customarily disclose the requested information rings hollow given that the

12

government has publicly disclosed the same information and stated that it reflects an industry-wide practice common to all participants in the 340B Program.

Nor can HRSA rely solely on the contracts' confidentiality provisions to assert blanket confidentiality over the documents in full. *See* Ex. 5 at 1. Private confidentiality agreements are "not sufficient in and of themselves to establish confidentiality under Exemption 4." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 64 (D.D.C. 2015). This is even more true after *Argus Leader*: The question is whether the *specific* information requested is "*customarily* kept private" by the submitting parties, not whether the parties happen to have a general confidentiality clause in the contract at issue. 588 U.S. at 434 (emphasis added).

Turning to the second (possible) condition, there is no evidence that the submitting parties requested—much less that HRSA gave—assurances that the requested information would not be disclosed. If anything, the evidence is to the contrary, because the government has already publicly disclosed the purported substance of the information contained in the pharmacy contracts, including in filings before this Court. Releasing the same basic information in response to Sanofi's FOIA request—again, on an anonymized basis—therefore could not harm any particular company's interest in confidentiality.

Nor *could* the government have assured covered entities that it would maintain confidentiality over their compliance with applicable law. Section 340B prohibits covered entities from engaging in diversion, 42 U.S.C. § 256b(a)(5)(B), and the responsive information relates to covered entities' compliance with this provision.

If contracts address title and agency, as the government has argued, then that information would be subject to disclosure—either in an administrative adjudication, *see* 42 C.F.R. § 10.21(a)(2) (permitting diversion claims against covered entities), or through termination of the covered entities' participation in the 340B Program, *see* 42 U.S.C. § 256b(a)(4) (defining "covered entity" to mean "an entity that meets the requirements described in" § 256b(a)(5)(B)). The information would thus lose any protection under Exemption 4. *See infra* (discussing waiver). In other words, the government would have had no legitimate basis for assuring covered entities that the agency would withhold evidence relating to their compliance with Section 340B.

## C. The Government Waived Reliance on Exemption 4.

Even if Exemption 4 otherwise applies, the government waived the application of Exemption 4 by publicly disclosing the substance of the requested contract terms.

"[T]he government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983)). This principle flows from "the logic of FOIA," because "where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (quotation marks omitted). To establish waiver, the party advocating disclosure need only "point to specific information in the public domain that appears to duplicate that being withheld." *CREW*, 58 F.4th at 1271 (cleaned up).

14

Sanofi has identified four public government documents—the Advisory Opinion, two briefs, and the Answer in this case—that address the agency relationship between covered entities and contract pharmacies and which party maintains title over 340B-priced drugs. *See, e.g.*, *Cottone*, 193 F.3d at 554 (noting that court documents, including briefs, are part of the public domain for purposes of waiver); *Pike v. U.S. Dep't of Justice*, 306 F. Supp. 3d 400, 410 (D.D.C. 2016) (government waived protection of information disclosed in a civil complaint). That is the same information Sanofi seeks here. *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (noting that "[i]n most waiver cases, the inquiry turns on the match between the information requested and the content of the prior disclosure"). Indeed, if the government's representations are accurate, the requested information should line up with what the agencies have already disclosed. The Court should therefore compel disclosure of the responsive records even if it concludes HRSA has an "otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).

## D. The Government Cannot Show Reasonably Foreseeable Harm From Disclosing the Pharmacy Contracts.

These public disclosures also defeat HRSA's conclusory statement that it "reasonably foresee[s] that disclosure would harm an interest protected" by Exemption 4. *See* Ex. 4 at 2. "An agency shall … withhold information under this section only if … the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *see also Shteynlyuger*, 698 F. Supp. 3d at 124 (explaining that application of the foreseeable-

harm standard to Exemption 4 requires a showing of "foreseeable commercial or financial harm to the submitter upon release of the contested information").

HRSA has not explained how disclosing the requested information would result in commercial or financial harm—again, the information has no obvious commercial value, and the government has already disclosed that the information reflects an industry-wide practice. Because Sanofi seeks information unassociated with any specific company, Sanofi's request is disconnected from any articulable commercial harm. *Cf. Nat'l Bus. Aviation Ass'n, Inc. v. FAA*, 686 F. Supp. 2d 80, 86–87 (D.D.C. 2010) (finding that a list of aircraft registration numbers was not protected because it could not be used to "determine the identity of the occupants of any particular flight" or "discover the business purpose of any flight"). Indeed, when the contracting parties need not even be identified, there is no plausible basis to find that disclosure would cause commercial consequences to any particular company. *See Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 525 F. Supp. 3d 90, 97 (D.D.C. 2021) (rejecting agency's "generalized observations" about commercial harm caused by disclosure when the agency "asserts no commercial interest on behalf of [a company] *specifically*" (emphasis added)).

## II. HRSA Failed To Segregate Responsive Portions Of The Contracts.

In addition, HRSA has made no attempt to segregate exempt material and disclose non-exempt material, as required by both FOIA and HHS's implementing regulations. Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are

16

exempt." 5 U.S.C. § 552(b); *see also* 45 C.F.R. §§ 5.2(a), 5.28(c); *Gandhi v. Ctrs. for Medicare & Medicaid Servs.*, 665 F. Supp. 3d 49, 54 (D.D.C. 2023) (explaining that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions").

Given this obligation, HRSA cannot (as it did here) withhold the contracts in full simply because it claims to have identified *some* exempt information, such as product-pricing terms. Those terms must first be segregated from non-exempt information, then HRSA must provide "a detailed justification," rather than "conclusory statements," to show "that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (quotation marks omitted). HRSA has failed to do any of that here.

## III. The Court Should Award Full Relief And Retain Jurisdiction.

In light of HRSA's failure to comply with FOIA, the Court should issue several forms of relief appropriate to the facts of this case:

(1) a declaratory judgment that Sanofi is entitled to disclosure of all portions of pharmacy contracts reflecting whether contract pharmacies act as agents of covered entities and whether covered entities maintain title over 340B-priced drugs shipped to contract pharmacies, and that HRSA lacked a legal basis to withhold such portions of the contracts under Exemption 4;

(2) an order directing HRSA to segregate and promptly produce the portions of *all* pharmacy contracts (not just the initial batch of 43 pages) addressing whether

contract pharmacies act as agents of covered entities and whether covered entities maintain title over 340B-priced drugs shipped to contract pharmacies;

(3) an injunction prohibiting HRSA from withholding such portions of the contracts; and

(4) an order requiring HRSA to promptly produce an index identifying all contracts and portions of contracts being withheld. Compl. at 15.

The Court should grant this relief in full. *See* 5 U.S.C. §§ 552(a)(4)(B) (FOIA authorizes a court "to enjoin the agency from withholding agency records and to order the production of any records improperly withheld from the complainant."), (a)(6)(C)(i) ("Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request."); 28 U.S.C. § 2201(a) (declaratory relief); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (explaining that "the agency bears the burden before the trial court of proving the applicability of claimed [FOIA] exemptions" and that "[t]o carry this burden, an agency must submit a 'Vaughn Index' to explain why it has withheld information"); *Northwestern Univ. v. Dep't of Agric.*, 403 F. Supp. 2d 83, 86 (D.D.C. 2005) (ordering the government "to submit a *Vaughn* Index" so the court could "assess the adequacy of the [government's] response and the applicability of the claimed exemptions").

To be clear, granting that relief would not end this case. "[T]he substance of the controversy" will not "disappear[ ]" until *all* responsive "records are produced." *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) (per curiam). Even "when

an agency has produced records in response to a FOIA request, a plaintiff may still have a cognizable interest in having the court determine whether" the agency fully complied with its FOIA obligations by releasing *all* responsive and non-exempt records. *Northwestern Univ.*, 403 F. Supp. 2d at 85–86. Although HRSA has reviewed an initial batch of "43 pages of pharmacy contracts responsive to" Sanofi's FOIA request, Ex. 4 at 2, there are "hundreds" more pharmacy contracts responsive to the FOIA request that have yet to be reviewed, Ex. 3 at 2. This Court should accordingly retain jurisdiction until HRSA releases "all nonexempt material." *Northwestern*, 403 F. Supp. 2d at 86; *see also Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) (per curiam) (noting that *after* the agency "release[s] all nonexempt material," there is "no further judicial function to perform under the FOIA").

To ensure the prompt resolution of this controversy, the Court should also set a processing schedule. When left to its own devices, HRSA has proved unable (or unwilling) to act in a timely manner. This suit stems from a FOIA request Sanofi filed over *three years* ago. And HRSA has made a mockery of the 20-day statutory time limit for responding to administrative appeals by sitting on Sanofi's appeal for over *two-and-a-half* years. 5 U.S.C. § 552(a)(6)(A)(ii). As explained, this extreme delay has prejudiced Sanofi because covered entities continue to claim that Sanofi's contract-pharmacy policies violate the 340B statute. The withheld information will help Sanofi defend itself against such claims and decide whether to bring its own diversion claims against covered entities. Sanofi thus has a strong interest in obtaining the responsive records sooner rather than later—and given HRSA's evident

19

lack of urgency, disclosures should proceed on this Court's timeline rather than the agency's. *See Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) ("A court … may use its equitable powers to require the agency to process documents according to a court-imposed timeline."); *Colbert v. FBI*, No. 16-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) ("Courts have broad discretion to determine a reasonable processing rate for a FOIA request.").

Sanofi accordingly proposes the following processing schedule:

1.    HRSA shall produce an index identifying all responsive pharmacy contracts 30 days after entry of final judgment;

2.    HRSA shall begin releasing pharmacy contracts on a rolling basis 30 days thereafter;

3.    HRSA shall release at least 500 pages, and in no event fewer than 25 pharmacy contracts, per month until all responsive contracts are released.

## CONCLUSION

The Court should grant Sanofi's motion for summary judgment.

Dated:  October 3, 2024                     Respectfully submitted,

                                            _/s/ Brett A. Shumate_____

Toni-Ann Citera                             Brett A. Shumate  (D.C. Bar No. 974673)
(admitted pro hac vice)                     Megan Lacy Owen  (D.C. Bar No. 1007688)
Rajeev Muttreja                             JONES DAY
(admitted pro hac vice)                     51 Louisiana Avenue, N.W.
JONES DAY                                   Washington, D.C. 20001
250 Vesey Street                            Telephone: (202) 879-3939
New York, New York 10281                    Facsimile: (202) 626-1700
Telephone: (212) 326-3939
Facsimile: (212) 755-7306


                    *Counsel for Plaintiff*