UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SANOFI-AVENTIS U.S. LLC,

                Plaintiff,

v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

                Defendants.

Civil Action No. 24-1603 (DLF)

---

**DEFENDANTS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT,
OPPOSITION TO SANOFI'S MOTION FOR SUMMARY JUDGMENT, AND
RESPONSE TO LILLY'S MOTION TO FILE BRIEF AS *AMICUS CURIAE***

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ..................................................................................................................... 5

I.    Plaintiff's Motion is Moot for the Two Sample Contracts Because Defendants
      Produced What Plaintiff Requested. ....................................................................... 5

II.   Defendants Applied Exemption 4 Correctly ........................................................... 7

      A.    Commercial ................................................................................................... 9

      B.    Confidential ................................................................................................. 10

      C.    Foreseeable Harm ....................................................................................... 12

III.  The Requested Records are Not in the Public Domain .......................................... 14

IV.   Defendants Have Segregated All Reasonably Segregable Information .................. 14

V.    The Court Should Not Order a Production Schedule or a *Vaughn* Index at this
      Time, and Plaintiff Should Not Be Permitted to Engage in More Piecemeal
      Litigation .............................................................................................................. 15

VI.   Lilly's Amicus Curiae Brief is Largely Irrelevant ................................................. 19

CONCLUSION ............................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*,
573 F. Supp. 3d 78 (D.D.C. 2021) ............................................................... 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................... 5

*AquAlliance v. Nat'l Oceanic & Atmospheric Admin.*,
Civ. A. No. 17-2108 (CRC), 2019 WL 2451687 (D.D.C. June 12, 2019) ................... 19

*Baker & Hostetler LLP v. Dep't of Com.*,
473 F.3d 312 (D.C. Cir. 2006) .......................................................... 8, 10, 14

*Bayala v. Dep't of Homeland Sec.*,
827 F.3d 31 (D.C. Cir. 2016) ....................................................................... 5

*COMPTEL v. FCC*,
910 F. Supp. 2d 100 (D.D.C. 2012) ............................................................... 9

*Cottone v. Reno*,
193 F.3d 550 (D.C. Cir. 1999) .................................................................... 14

*CREW v. Dep't of Just.*,
58 F.4th 1255 (D.C. Cir. 2023) .................................................................... 8

*CREW v. Dep't of Just.*,
Civ. A. No. 19-3626, 2024 WL 1406550 (D.D.C. Mar. 31, 2024) ........................... 8

*Critical Mass Energy Project v. Nuclear Regul. Comm'n*,
975 F.2d 871 (D.C. Cir. 1992) ................................................................. 7, 13

*EPIC v. Dep't of Homeland Sec.*,
117 F. Supp. 3d 46 (D.D.C. 2015) ........................................................... 8, 10

*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) ..................................................................... 5

*Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*,
Civ. A. No. 21-1968 (TNM), 2022 WL 17356879 (D.D.C. Dec. 1, 2022) ................... 13

*Leopold v. Dep't of Just.*,
Civ. A. No. 19-3192 (RC), 2021 WL 124489 (D.D.C. Jan. 13, 2021) ....................... 13

*Lewis v. Dep't of Treasury*,
851 F. App'x 214 (D.C. Cir. 2021) ............................................................... 15

*Mead Data Cent., Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ................................................................. 15

*Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ......................................................................... 7, 9

*Nadler v. FDIC*,
92 F.3d 93 (2d Cir. 1996) .......................................................................... 8

*Nat'l Parks & Conservation Ass'n v. Morton*,
498 F.2d 765 (D.C. Cir. 1974) .................................................................... 7

*Naumes v. Dep't of Army*,
Civ. A. No. 21-1670 (JEB), 2022 WL 17752206 (D.D.C. Dec. 19, 2022) ................. 13

*Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health*,
209 F. Supp. 2d 37 (D.D.C. 2002) ............................................................... 8

*Reps. Comm. for Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ...................................................................... 5

*Republican National Committee v. Department of State*,
Civ. A. No. 16-0486 (JEB), 2016 WL 9244625 (D.D.C. Sept. 16, 2016) .................. 16

*Sabra v. CBP*,
Civ. A. No. 20-0681 (CKK), 2021 WL 796166 (D.D.C. Mar. 2, 2021) ..................... 4

*Sussman v. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) .................................................................. 15

*Wilson v. FCC*,
Civ. A. No. 21-0895 (RMM), 2022 WL 4245485 (D.D.C. Sept. 15, 2022) ................. 11

**STATUTES**

5 U.S.C. § 551 ........................................................................................ 8

5 U.S.C. § 552 ............................................................................... 1, 7, 8, 15

**RULES**

Fed. R. Civ. P. 56 ................................................................................. 1, 5

LCvR 16.3 ............................................................................................. 19

LCvR 7 ............................................................................................. 1, 19

**REGULATIONS**

45 C.F.R. § 5.41 ................................................................................................................. 12, 18

45 C.F.R. § 5.42 ................................................................................................................. 12, 18

Defendants U.S. Department of Health and Human Services (the "Department") and U.S. Health Resources and Services Administration ("HRSA" or the "Administration"), through the undersigned counsel, respectfully move for partial summary judgment and oppose Plaintiff Sanofi-Aventis U.S. LLC's ("Sanofi's") motion for summary judgment under Federal Rule of Civil Procedure ("Rule") 56. Defendants also respond to Eli Lilly and Company's ("Lilly's") motion for leave to file a brief as amicus curiae under Local Civil Rule ("LCvR") 7(o).

## BACKGROUND

This is a case under the Freedom of Information Act, 5 U.S.C. § 552. On July 21, 2021, Plaintiff submitted a request for the following records:

1. In HRSA's May 17 letter to Sanofi, HRSA referred to "an analysis of the complaints HRSA has received from covered entities" about Sanofi's 340B integrity initiative. Sanofi is seeking copies of (a) all such complaints, and (b) any emails, memoranda, or documents reflecting HRSA's analysis of such complaints.

2. Copies of, or documents memorializing, any other communications from covered entities to HRSA regarding Sanofi's participation in the 340B program that are not covered by request #1.

3. In HRSA's May 17 letter to Sanofi, HRSA stated that "Sanofi's actions have resulted in overcharges." Sanofi is seeking copies of all documents calculating or reflecting any purported overcharges.

4. In HRSA's May 17 letter to Sanofi, HRSA stated that Sanofi's policy "places restrictions on 340B pricing to covered entities that dispense medication through pharmacies, unless the covered entities provide claims data to a third-party platform." Sanofi is seeking documents reflecting, analyzing, or otherwise assessing the burden imposed on covered entities of complying with Sanofi's policy.

5. All emails, memoranda, or other documents related to the Sanofi policy referred to in HRSA's May 17 letter to Sanofi from July 2020 to the present, including documents that post-date May 17, 2021.

6. All emails, memoranda, or other documents related to the formulation of HRSA's May 17 letter to Sanofi, including documents that post-date May 17, 2021.

7.  The guidance promulgated at 75 Fed. Reg. 10,272, 10,278 (Mar. 5, 2010) instructs that when covered entities discover drug diversion or duplicate discounting at contract pharmacies, they must "take immediate remedial action to assure compliance and notify [the agency] about such compliance problems and actions taken to remedy those problems." Sanofi is seeking copies of all emails, memoranda, or other documents reflecting those notifications and actions taken since March of 2010, and any analysis or response from HRSA about such notifications and actions taken.

8.  The guidance promulgated at 75 Fed. Reg. 10,272, 10, 278-79 (Mar. 5, 2010) instructs that covered entities using contract pharmacies must certify compliance with various regulatory requirements. Sanofi is seeking copies of all emails, memoranda, or other documents reflecting those certifications (or re-certifications) since March of 2010, and any analysis or response from HRSA about such certifications or re-certifications.

9.  In Advisory Opinion 20-06 on Contract Pharmacies under the 340B Program (Dec. 30, 2020), the general counsel "conclude[d] that to the extent contract pharmacies are acting as agents of a covered entity, a drug manufacturer in the 340B Program is obligated to deliver its covered outpatient drugs to those contract pharmacies and to charge the covered entity no more than the 340B ceiling price for those drugs." Sanofi is seeking all emails, memoranda, contracts or other documents reflecting whether (a) contract pharmacies act as agents of covered entities, and (b) covered entities maintain title to drugs shipped to contract pharmacies.

FOIA Req. (July 21, 2021), ECF Nos. 1-2, 18-4.

On July 22, 2021, Defendants sent Plaintiff an acknowledgment letter and assigned the FOIA request number 21F218. May Decl. ¶ 11, ECF No. 20-2; *see also* Acknowledgement (July 22, 2021), ECF No. 18-5. On October 19, 2021, Defendants sent Plaintiff an email explaining "there are hundreds of contract pharmacies, and each contract will have to be sent to each respective pharmacy for submitter review. This process will take several months to complete . . . If you would still like to see contracts, would you be okay with receiving one or two of them, instead of all? My assumption is that the contract will look fairly uniform except for the names/identifying information unique to each pharmacy." May Decl. ¶ 12; *see also* Email from Defs. (Oct. 19, 2021, at 9:51 a.m.), ECF No. 18-6.

Plaintiff did not agree to narrow the request but did state that they would be willing to reconsider after reviewing 1-2 contracts. May Decl. ¶ 13; *see also* Email from Pl. (Oct. 19, 2021, at 1:04 p.m.), ECF No. 18-6. On December 6, 2021, Defendants produced 8,127 pages satisfying items one through eight of Plaintiff's FOIA request, and almost all of item nine. May Decl. ¶ 14. On December 8, 2021, Defendants sent Plaintiff a production letter stating that it had reviewed two contracts, comprising of forty-three pages total, and was redacting the pages in their entirety under Exemption 4. May Decl. ¶ 15; *see also* Letter from Defs. (Dec. 8, 2021), ECF No. 18-7. Defendants explained in an email to Plaintiff that they redacted the contracts in full "because the contracts had clauses that prohibited release of any portions of the contracts except to the parties to the contracts." Email from Defs. (Dec. 9, 2021, at 10:38 a.m.), ECF No. 18-8.

Plaintiff filed an administrative appeal on January 4, 2022, based on the Exemption 4 withholdings only. *See* Pl.'s Appeal (Jan. 4, 2022), ECF No. 18-9. The FOIA office for the Health Resources and Services Administration received notice of Plaintiff's appeal from the FOIA office for Health and Human Services on January 19, 2022. May Decl. ¶ 17. Before the appeal was resolved, Plaintiff filed suit in this Court on May 31, 2024. *See generally* Compl., ECF No. 1.

Almost immediately after filing suit, Plaintiff sought to set a schedule for summary judgment briefing. Plaintiff stated that the dispute was ripe, that there was no indication that Defendants intended to change their position, and that there was no indication that the submitter of the pharmacy contracts would consent to their release. *See* Jt. Status Rep. at 3 (Sept. 6, 2024), ECF No. 17.

Defendants, to the contrary, sought to engage in rolling joint status reports, as is customary in this District, while they finished processing the last item of Plaintiff's request. *Id.* at 4. Defendants explained, contrary to Plaintiff's belief, that either Defendants or the submitters could

change their positions, which would obviate the need for summary judgment briefing altogether and save the parties, as well as the Court, from spending their limited resources on unnecessary piecemeal litigation. *Id.* In fact, as will be explained in more detail below, Defendants were correct, as one of the contracts was released in full and the other in part, revealing most, if not all, of the information that Plaintiff is interested in. With more time, the parties likely could have avoided filing these motions altogether.

Plaintiff asks this Court for declaratory relief; however, it is axiomatic that such relief is reserved for policy and practice claims under FOIA, and Plaintiff brings no such claim. *Sabra v. CBP*, Civ. A. No. 20-0681 (CKK), 2021 WL 796166, at *4 (D.D.C. Mar. 2, 2021) ("To the contrary, the weight of legal authority in this circuit indicates that declaratory judgment in the FOIA context is reserved for cases involving 'policy or practice' violations where agencies 'engage in patterns or have policies of denying FOIA requests.'"). For the first time, Plaintiff indicates that it wants Defendants to search for, process, and produce all relevant pharmacy contracts in their possession, not just the two that Defendants have proposed as samples. *See* Pl.'s Mot. Summ. J. (ECF No. 18-1, "Pl. Mot.") at 22-23. Plaintiff has further indicated that it seeks a "final judgment" but also orders for a rolling production and for the creation of a *Vaughn* index, which would suggest that the Court's ruling on these motions is not, in fact, final.

For the reasons below, the Court should grant Defendant's motion for the two sample records Defendants collected and produced to Plaintiff and deny Plaintiff's motion in full. Instead, the Court should require the parties to work together to fulfill the last item of Plaintiff's request without the Court's involvement on a time frame that Defendants can comply with—not the arbitrary schedule Plaintiff requests—and refrain from further piecemeal litigation. Last, the Court

should deny Lilly's motion for leave to file a brief as amicus curiae because it provides no analysis of Exemption 4 in this FOIA case.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* Although all inferences are taken in a light most favorable to the nonmoving party, a party opposing summary judgment may not rest on allegations or denials from its pleadings but "must set forth specific facts showing that there is a genuine issue." *Id.* at 255-56.

In a FOIA case, summary judgment may be granted "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citation omitted).

## ARGUMENT

### I.   Plaintiff's Motion is Moot for the Two Sample Contracts Because Defendants Produced What Plaintiff Requested.

When an agency releases the records at issue, the issue is moot under FOIA as to those records. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 367 (D.C. Cir. 2021) ("The government released the full and unredacted version of that letter during the pendency of this appeal. So this issue is moot."); *Bayala v. Dep't of Homeland Sec.*, 827 F.3d 31, 34 (D.C. Cir. 2016) ("[W]here the government has released . . . a portion of the requested documents, the case is moot . . . with regard to those documents.").

Plaintiff has made it clear throughout its brief that the information it seeks is narrow. Plaintiff "seeks anonymized contract terms between covered entities and third-party contract pharmacies that reflect (1) whether contract pharmacies act as agents of covered entities, and (2) whether covered entities maintain title over 340B-priced drugs shipped to contract pharmacies." Pl. Mot. at 6, 9, 10.

On October 11, 2024, Defendants reproduced one of the contracts consisting of 23 pages—the Walgreens contract—and withheld 13 pages in part under Exemption 4. However, Defendants specifically released this passage:

> 8.10. <u>Independent contractor</u>. None of the provisions of this Agreement are intended to create, nor shall they be deemed or construed to create, any relationship between the parties hereto other than that of independent entities contracting solely for the purposes of effecting the provisions of this Agreement. Neither of the parties shall be construed to be the partner, co-venturer, or employee or representative of the other party.

Walgreens Contract § 8.10, ECF No. 20-4.

On November 7, 2024, Defendants reproduced the other contract consisting of 20 pages—the Pole Mountain State contract—in full. As is relevant here, section 4.2.2 states:

> 4.2.2. <u>Receipt of 340B Drugs</u>. Upon receipt of 340B Drugs, Pharmacy shall compare all shipments received and, make commercially reasonable efforts to either confirm receipt or report any discrepancies to Covered Entity or to 340Basics within five (5) business days of the receipt thereof. Pharmacy shall be deemed to own the replenished 340B Drugs after confirming receipt in accordance with the above procedures.

Pole Mountain State Contract § 4.2.2, ECF No. 20-5. Section 13 also says:

> 13. Relationship Between Parties. Pharmacy and Covered Entity shall perform all professional and other services under the terms of this Agreement as independent contractors. They shall exercise their own judgement on all questions of professional practice. Nothing herein shall be deemed to make the Parties partners, create an agency relationship or create a joint venture.

*Id.* § 13.

Yesterday, on November 13, 2024, Walgreens further agreed to release section 3.3.5 of the Walgreens contract, which discusses title of the 340 drugs. *See* May Decl. ¶ 20; Walgreens Decl. ¶ 4, ECF No. 20-3. Defendants plan to re-process the Walgreens contract with section 3.3.5 unredacted to Plaintiff; however, prior to releasing the contract, Defendants must prepare and send an Intent to Release letter to Walgreens affording them five workdays to prevent the release of the records by filing a reverse FOIA lawsuit in federal court. Defendants plan to produce the updated Walgreens contract to Plaintiff by Monday, November 25, 2024, barring any judicial intervention. May Decl. ¶ 20.

The information released above, as well as the information Defendants intend to release in the near future, is the "anonymized contract terms" that Plaintiff seeks. For these two contracts, the issue appears to be moot. To the extent that there is any disagreement, the rest of the Walgreens contract was properly withheld under Exemption 4 for the reasons below.

## II.    **Defendants Applied Exemption 4 Correctly.**

Exemption 4 protects "[t]rade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). The exemption protects the interests of both the government and the submitter of the information. *See, e.g.*, *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767-70 (D.C. Cir. 1974), *abrogated on other grounds by Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) (concluding that the legislative history of the FOIA "firmly supports an inference that [Exemption 4] is intended for the benefit of persons who supply information as well as the agencies which gather it"). Specifically, it encourages submitters to provide the government with confidential information that is accurate and reliable and provides assurances that such information will be safeguarded, thereby protecting submitters from competitive disadvantage if disclosed. *See Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992).

When information does not contain trade secrets, Exemption 4 applies if the withheld information is shown to be "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Information provided by a "person" includes "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2); *see also Nadler v. FDIC*, 92 F.3d 93, 95 (2d Cir. 1996). It also includes submitter-generated information summarized or reformulated by the agency. *See Elec. Privacy Info. Ctr. ("EPIC") v. Dep't of Homeland Sec.*, 117 F. Supp. 3d 46, 63 (D.D.C. 2015) (information is protected even if the government summarized information obtained from another person). Similarly, this Court has held the fact that particular information is "arrived at through negotiation" with the government does not necessarily preclude it from being regarded as "obtained from a person." *Pub. Citizen Health Rsch. Grp. v. Nat'l Insts. of Health*, 209 F. Supp. 2d 37, 44-45 (D.D.C. 2002) (concluding that although a licensee's final royalty rate was the result of negotiation with the agency, that did "not alter the fact that the licensee is the ultimate source of [the] information," in as much as the licensee "must provide the information in the first instance").

Information is "commercial" for Exemption 4 purposes when it is "commercial in and of itself, meaning it serves a commercial function or is of a commercial nature." *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, Civ. A. No. 19-3626, 2024 WL 1406550, at *3 (D.D.C. Mar. 31, 2024) (quoting *CREW v. Dep't of Just.*, 58 F.4th 1255, 1263 (D.C. Cir. 2023)). Information meets this standard "if it pertains to the exchange of goods or services or the making of a profit," such as records that "actually reveal basic commercial operations" or "customer lists." *Id.* The concept "reaches more broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler LLP v. Dep't of Com.*, 473 F.3d 312, 319 (D.C. Cir. 2006); *see also COMPTEL v. FCC*,

910 F. Supp. 2d 100, 115 (D.D.C. 2012) ("The terms 'commercial' or 'financial' in Exemption 4 . . . are construed broadly."). But information is not "commercial" under Exemption 4 just because "public disclosure of [it] could inflict commercial harm," *CREW*, 58 F.4th at 1264, or "reveal the existence of a contract likely to attract public scrutiny," *id.* at 1269. "[T]he commercial consequences of disclosure are not on their own sufficient to bring confidential information within the protection of Exemption 4 as commercial." *Id.* at 1267.

"Commercial or financial" information is considered "confidential" under Exemption 4 "whenever it is customarily kept private, or at least closely held, by the person imparting it." *Argus Leader*, 139 S. Ct. at 2363. In *Argus Leader*, the Supreme Court noted that an additional requirement for confidentiality may be whether the party receiving the information has provided some assurance that it will remain secret. *Id.* The Court declined to adopt such a requirement, as it found the condition to be clearly satisfied in the case before it but did note that particularly "where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4." *Id.* at 2366.

### A.    Commercial

Here, assuming Plaintiff is still dissatisfied with Defendants' withholdings, Defendants have properly withheld the rest of the Walgreens contract under Exemption 4. First, the information is commercial. At issue is redacted information on a contract between Neighborhood Outreach and Walgreens related to the sale and exchange of drugs under the 340B program. *See generally* Walgreens Contract § 1.3. This is nearly a textbook definition of "commercial." *See* Commercial, Black's Law Dictionary (12th ed. 2024) ("Of, relating to, or involving the selling of goods or services for profit."). Plaintiff argues that the information it specifically seeks— "anonymized contract terms reflecting the relationship between the contracting parties and which

party maintains title over 340B-priced drugs"—is not commercial because it is instead "legal," suggesting that the terms commercial and legal are mutually exclusive and if something is legal it cannot also be commercial, but this argument misses the mark. Regardless of whether the information Plaintiff seeks is also legal, it relates to the selling of goods and services for profit between Neighborhood Outreach and Walgreens, so it is undoubtedly commercial under Exemption 4. *Cf. Baker & Hostetler*, 473 F.3d at 319 ("The exemption reaches more broadly and applies (among other situations) when the provider of the information has a commercial interest in the information submitted to the agency.").

### B.    Confidential

Second, the information is also confidential. Plaintiff asserts in its brief that Defendants "provided no evidence that covered entities and contract pharmacies 'customarily and actually maintain in secrecy' the limited information requested by Sanofi." Pl.'s Mot. at 17. Again, assuming there is still a dispute, the Walgreens declaration clearly shows otherwise regarding the information that continues to be redacted. As explained by the Walgreens declaration, the "information sought is confidential because it is customarily kept private and closely held by Walgreen Co. in accordance with company policy and Section 8.3 (Confidentiality) of the Agreement. In addition, NOAH is also required by Section 8.3 of the Agreement to maintain the confidentiality of the entirety of the Agreement." Walgreens Decl. § 5(c). This easily satisfies the standard.

In its brief, Plaintiff also argued that private confidentiality agreements are "not sufficient in and of themselves to establish confidentiality under Exemption 4" but tellingly, the case it cites for that proposition supports the opposite. In *EPIC*, 117 F. Supp. 3d at 65, the Court noted how confidentiality agreements are "useful to the Court in evaluating whether intent existed to shield the information from the public" before finding that the confidentiality agreement at issue in that

case, among other things, supported withholdings under Exemption 4. *Id.* ("In considering the parties' confidentiality agreements, [among other things], the Court concludes that the [records] would not ordinarily be released to the public and are confidential."). Thus, the confidentiality provision in the Walgreens contract, which is section 8.3, is strong evidence that the parties customarily and actually keep the requested information private.

Further, the evidence shows, even though no assurance of confidentiality is required, Defendants in this case provided one. On this point, *Wilson v. FCC*, Civ. A. No. 21-0895 (RMM), 2022 WL 4245485, at *10 (D.D.C. Sept. 15, 2022), is instructive. There, the Court noted how "Courts in this Circuit have declined to 'read the word "confidential" to impose a blanket requirement that the government provide an assurance of privacy in every case in which it asserts Exemption 4,' in part because doing so would prompt 'many fairly arbitrary disputes over whether such an assurance can be implied.'" *Id.* The Court in *Wilson* continued, "[i]f anything, courts here have taken the position that 'privately held information is generally confidential absent an express statement by the agency that it would *not* keep information private, or a clear implication to that effect[.]'" *Id.* (emphasis in original). Thus, an express assurance of confidentiality is not necessary; to the contrary, for information to lose its confidentiality, the government must expressly state to the affected individual or company that it is not keeping the information private.

After explaining the rule, the Court examined the agency's regulations—like the regulations for Health and Human Services in this case—delineating how the agency handles information not routinely available to the public. *See id.* (examining 47 C.F.R. § 0.441 et seq.). The Court noted how after the plaintiff filed a FOIA request, the agency "followed its internal procedure for alerting [the submitter] that a member of the public had requested to inspect its materials under [agency regulations.]" *Id.* There, the submitter followed the procedures, and the

Court found that the agency's actions "affirmatively alerted [the submitter] to the agency's confidentiality provisions and once invoked, treated [the submitter's] materials as if they were covered by the confidentiality provisions." *Id.* "[An] agency's regulations are enough to show that the [agency] advertised that confidentiality was available to [the submitter] if [the submitter] followed appropriate procedures, and [the submitter] followed the procedures." *Id.*

Here, like in *Wilson*, Defendants have regulations for communicating with a submitter when information about the submitter is requested through FOIA. *See* 45 C.F.R. §§ 5.41; 5.42; *see also* May Decl. ¶¶ 6, 7, 41. As the May declaration shows, like in *Wilson*, after Defendants became concerned that some of the information requested might be commercial information that is privileged or confidential, Defendants contacted Walgreens to inquire about whether the information was, in fact, commercial and confidential. *See* May Decl. ¶ 29 (declaring how the Administration sent a predisclosure notice to Walgreens on September 4, 2024, in accordance with Executive Order 12600 and the Department's regulations to verify whether Walgreens wished to assert confidentiality); *id.* ¶ 30 ("In response, Walgreens provided a declaration meeting FOIA's standards for withholding information under Exemption 4 and Walgreens agreed to release section 3.3.5 of the responsive Agreement[.]"); *see also* Walgreens Decl. ¶¶ 1-4. To argue that there was no assurance of confidentiality when there is this much evidence in the record of an exchange discussing confidentiality between Defendants and Walgreens, like there was in *Wilson*, ignores the evidence.

### C.    Foreseeable Harm

Lastly, Defendants have shown foreseeable harm. As explained by the Walgreens declaration:

> Disclosure of the information sought would not have been disclosed by Walgreen
> Co. or NOAH but for disclosure of the Agreement to HRSA and would cause
> Walgreen Co. substantial competitive harm as it may serve as a roadmap for

competitors and other third-parties to: (i) build a 340B pharmacy services program based on the operational and financial structure of the Walgreen Co. 340B pharmacy services program described in the Agreement to then compete with Walgreen Co.; (ii) identify potential vulnerabilities in Walgreen Co.'s 340B program operational and/or financial structure to then improve or refine their own 340B program operations and/or financial structure; and/or (iii) develop marketing strategies that effectively compare and contrast the third party's 340B program operations and/or financial structure to the Walgreen Co. 340B program in an effort to persuade covered entities to contract with such third-party in lieu of contracting with Walgreen Co.

Walgreens Decl. ¶ 5(d). This satisfies the standard.

Additionally, where a company has voluntarily provided information to the government, it would impair the government's ability to obtain similar information in the future. *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, Civ. A. No. 21-1968 (TNM), 2022 WL 17356879, at *5 (D.D.C. Dec. 1, 2022) ("And [the submitter] articulates one final foreseeable harm: if its information were to be disclosed, it might be less likely to voluntarily disclose such information to the government again."); *Leopold v. Dep't of Just.*, Civ. A. No. 19-3192 (RC), 2021 WL 124489, at *7 (D.D.C. Jan. 13, 2021) ("Furthermore, the submitted materials explain how public release of the confidential information would dissuade [the submitter] and others from cooperating with the government in the future.").

In fact, the D.C. Circuit has even instructed that this kind of harm is "common sense." *See Naumes v. Dep't of Army*, Civ. A. No. 21-1670 (JEB), 2022 WL 17752206, at *6 (D.D.C. Dec. 19, 2022) ("The potential harm to government interests from disclosure is especially notable in cases like this one, where confidential information was voluntarily provided to the Government. In such cases, the Circuit has instructed that the harm is 'common sense.' That is so here as well."); *Critical Mass*, 975 F.2d at 879 ("It is a matter of common sense that the disclosure of information the Government has secured from voluntary sources on a confidential basis will both jeopardize

its continuing ability to secure such data on a cooperative basis and injure the provider's interest in preventing its unauthorized release.").

## III.    The Requested Records are Not in the Public Domain

"Under [the] public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). This doctrine follows from the "logic of FOIA" because "where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes." *Id.* (citation omitted) (cleaned up). "Prior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). As such, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* (citation omitted).

Plaintiff argues that the public domain doctrine applies here because of four government documents: an advisory opinion, two briefs, and the answer in this case. *See* Pl. Mot. at 19-20. Plaintiff is incorrect. As stated above, under the public domain doctrine, "[p]rior disclosure of similar information does not suffice; instead, the specific information sought by the plaintiff must already be in the public domain by official disclosure." *Wolf*, 473 F.3d at 378. Plaintiff has not shown that any parts of the two contracts at issue are in the public domain. In fact, they are not, so Plaintiff's argument fails.

## IV.    Defendants Have Segregated All Reasonably Segregable Information

"An agency shall . . . consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C.

§ 552(a)(8)(A)(ii). "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Non-exempt portions of a document must be disclosed unless they are "inextricably intertwined" with exempt portions. *Sussman v. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). Agencies, further, are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. *Lewis v. Dep't of Treasury*, 851 F. App'x 214, 217 (D.C. Cir. 2021); *Sussman*, 494 F.3d at 1117.

It is unclear whether Plaintiff is still relying on this argument. When Plaintiff filed its motion, Defendants had not finished processing Plaintiff's request, and the two sample records at issue were being withheld in full. Defendant has now produced one of the records in full and the other in part. If Plaintiff is still advancing this argument, Defendants' declaration is entitled to a presumption of good faith that it has segregated all reasonably segregable information, which Plaintiff has not rebutted based on its conclusory arguments. *Lewis*, 851 F. App'x at 217; *Sussman*, 494 F.3d at 1117.

## V.    The Court Should Not Order a Production Schedule or a *Vaughn* Index at this Time, and Plaintiff Should Not Be Permitted to Engage in More Piecemeal Litigation.

Plaintiff has indicated in its motion that it seeks the following specific relief:

1.    HRSA shall produce an index identifying all responsive pharmacy contracts 30 days after entry of final judgment;

2.    HRSA shall begin releasing pharmacy contracts on a rolling basis 30 days thereafter;

3.    HRSA shall release at least 500 pages, and in no event fewer than 25 pharmacy contracts, per month until all responsive contracts are released.

Pl. Mot. at 25.

The Court should not order this relief. Instead, the Court should require the parties to work together to fulfill the last item of Plaintiff's request without the Court's involvement on a time frame that Defendants can comply with—not the arbitrary schedule Plaintiff requests—and refrain from further piecemeal litigation. It benefits no one. As the Court recognized in *Republican National Committee v. Department of State*, Civ. A. No. 16-0486 (JEB), 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016):

> If the Court made a decision limited <u>only</u> to these sixteen pages, conversely, it would open the door to burdensome piecemeal litigation—perhaps every month until State finishes productions in 2018. Both sides, in fact, have previously acknowledged that the most appropriate time for summary-judgment proceedings would be after the final production is delivered.

*Republican Nat'l Comm. v. Dep't of State*, Civ. A. No. 16-0486 (JEB), 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (emphasis in original).

Courts in this District routinely reject requests from frustrated plaintiffs to engage in piecemeal summary judgment briefing. *See, e.g.*, Min. Order, *Bader Fam. Found. v. Dep't of Educ.*, Civ. A. No. 21-1741 (DLF) (D.D.C. Oct. 26, 2022) ("The Court declines to address the plaintiff's arguments as to the adequacy of the search at this time. The defendant has not yet completed production of records responsive to the plaintiff's FOIA request, and the Court will not engage in piecemeal litigation while production is actively ongoing."); Min. Order, *Greenspan v. Dep't of Transp.*, Civ. A. No. 22-0280 (DLF) (D.D.C. Aug. 23, 2022) ("Nor will the Court order the defendant to prove the confidential nature of its redactions at this time, as the Court will not engage in piecemeal litigation on the application of FOIA exemptions while production is actively ongoing."); Min. Order, *Spletstoser v. Dep't of Def.*, Civ. A. No. 20-0731 (CKK) (D.D.C. July 7, 2020) ("Plaintiff proposes that the Court set a briefing schedule at this time as the documents have not been produced. In order to avoid piecemeal litigation, the Court will not set a briefing schedule at this time.").

Here, because Defendants had to allocate their resources to drafting this motion and responding to Plaintiff's motion, they could not concentrate on searching for, processing, and producing any more of the contracts that Plaintiff has only now indicated that it wants produced. *See* Pl. Mot. at 22-23 (seeking an "an order directing HRSA to segregate and promptly produce the portions of *all* pharmacy contracts" not just the initial batch of 43 pages (emphasis in original)).

Moreover, had Plaintiff been willing to confer more rather than litigate, then Defendants could have explained why Plaintiff's demands benefit neither party. First, Defendants do not have the resources to be able to comply with the relief Plaintiff seeks. The Administration's FOIA office, which is the office processing Plaintiff's request, has only five employees. *See* https://www. hhs.gov/foia/reports/annual-reports/2023/index.html. The office is receiving more FOIA requests than it can process. *See* 2024 HHS FOIA Quarterly Reports, https://www.hhs.gov/ foia/reports/quarterly/2024/index.html#q3 (showing the Administration received 124 requests in the third quarter of 2024, processed only 84 requests, and have 246 outstanding)

For this case, both the search and the processing of all contracts would take significant time and effort to conduct. May Decl. ¶ 34. Regarding the search, the Administration generally conducts 200 covered entity audits a year, and roughly 150 of those audits include covered entities that have contract pharmacies. May Decl. ¶ 35. The Administration estimates that those pharmacies have five contracts on average in their files. *Id.* Based on these estimates, the Administration believes this request could include approximately 7,500 contracts. *Id.* Defendants' prior estimate given to Plaintiff of hundreds of contracts was based on a misunderstanding. *Id.* ¶ 36. Each contract could have upwards of twenty pages or more. *Id.* ¶ 35. And all contracts are housed in audit files of each audited covered entity in the Administration's online document management system, meaning they are not easily accessible. *Id.*

17

The Administration will need to gather all the contracts to provide them to its FOIA office for processing. *Id.* ¶ 37. This process consists of five steps for Administration personnel: (1) pull a list of audits for years 2012 through 2021 at 10 minutes per list; (2) review the lists to determine number of entities with potentially responsive records at 30 minutes per list; (3) search the Office of Pharmacy Affairs Information System Compliance Module to determine how many contracts per audited entity at 30 minutes per audit; (4) download each contract into a separate location at 20 minutes per contract; and, finally, (5) quality assurance review of each contract at 1 minute per page. *Id.* Depending on the cutoff time, this search will take between 4,507 and 7,484 hours to complete and will roughly result in providing the FOIA office with approximately 75,000 to 195,000 pages to process. *Id.* ¶ 39.

Regarding processing, the Administration's FOIA office will then need to process the estimated 75,000 to 195,000 pages. *Id.* ¶ 40. Because all potentially responsive records are contracts, the FOIA office is obligated to provide pre-disclosure notices to the submitters of the records. *Id.* A person who submits records to the government may designate part or all the information in such records that they may consider exempt from disclosure under FOIA Exemption 4. *Id.* ¶ 41. The designation must be in writing. *Id.*; *see also* 45 C.F.R. § 5.41. The submitter has ten working days from receipt of the notice to object to disclosure of any part of the records and to state all bases for its objections. May Decl. ¶ 41; *see also* 45 C.F.R. § 5.42(a)(2). If the Administration decides to disclose the records, it must notify the submitter in writing and briefly explain why the Administration did not sustain the submitter's objections to disclosure and that the Administration intends to disclose the records five working days after the submitter receives the notice unless a district court orders the Administration not to release them. May Decl. ¶ 41; *see also* 45 C.F.R. § 5.42(a)(3).

Considering the magnitude of the relief that Plaintiff seeks, it is not possible for Defendants to meet the relief Plaintiff asks the Court to award of: (1) producing "an index identifying all responsive pharmacy contracts 30 days after entry of final judgment;" (2) "releasing pharmacy contracts on a rolling basis 30 days thereafter;" and (3) releasing "at least 500 pages, and in no event fewer than 25 pharmacy contracts, per month until all responsive contracts are released." If Plaintiff were willing to narrow their request to a handful of contracts instead of thousands, it would greatly help both parties process and receive the contracts in a timely manner. May Decl. ¶ 33 ("While the FOIA office is willing to work with Plaintiff to produce the requested records, the scale and timeframe suggested by Plaintiff is unattainable."); *id.* ¶ 42 ("Presently, HRSA FOIA does not have any additional resources to dedicate to this FOIA litigation.").

Further, whether Plaintiff receives 20 contracts in total, 200, or 2,000, it will likely not make a difference to its stated purpose for submitting its FOIA request. But for Defendants—a government agency with scarce resources trying to keep up with the demands of FOIA—it would make a huge difference. *Cf. Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 79 (D.D.C. 2021) ("Court dockets in this district overflow with Freedom of Information Act [ ] matters. Many of those cases seek reams of records, requiring massive efforts from defendant agencies."); *AquAlliance v. Nat'l Oceanic & Atmospheric Admin.*, Civ. A. No. 17-2108 (CRC), 2019 WL 2451687, at *6 (D.D.C. June 12, 2019) ("It is common knowledge that many agencies contend with a massive FOIA backlog."); *see also* LCvR 16.3(b), cmt. ("A significant portion of the nation's FOIA actions are pending in this Court.").

## VI.    Lilly's Amicus Curiae Brief is Largely Irrelevant

A party may file a brief as amicus curiae "only upon leave of Court, which may be granted after the submission of a motion for leave to file or upon the Court's own initiative." LCvR 7(o)(1). "A motion for leave to file an amicus brief shall concisely state the nature of the movant's interest;

identify the party or parties supported, if any; and set forth the reasons why an amicus brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case." LCvR 7(o)(2).

Lilly's amicus curiae brief does not discuss any of the elements of Exemption 4 at all. It is largely irrelevant to the issues in this FOIA case. Plaintiff seems capable of advocating for Lilly's position. The Court should deny Lilly's motion for leave to file a brief as amicus curiae.

## CONCLUSION

For the reasons above, the Court should deny Plaintiff's motion for summary judgment, deny Lilly's motion to file a brief as amicus curiae, and grant Defendants' cross motion for partial summary judgment.

Date:   November 14, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   _____/s/ Sam Escher_____
SAM ESCHER, D.C. Bar #1655538
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2531
Sam.Escher@usdoj.gov

*Counsel for United States of America*

20