# EXHIBIT A

*Walgreens*

## 340B CONTRACT PHARMACY SERVICES AGREEMENT

This 340B Contract Pharmacy Services Agreement ("**Agreement**") is made and entered into this 1st day of April, 2016 ("**Effective Date**") by and between Neighborhood Outreach Access to Health ("**Covered Entity**") and Walgreen Co. ("**Walgreens**").

### 1.    RECITALS

1.1.    Covered Entity qualifies for and participates in a federal drug discount program established under Section 340B of the Public Health Service Act that requires participating pharmaceutical manufacturers to extend discounted pricing to certain health care providers classified as covered entities;

1.2.    Covered Entity is authorized: (i) to purchase prescription and non-prescription medications at reduced cost through Section 340B of the Public Health Service Act for outpatients of Covered Entity Locations; and (ii) to contract with a licensed pharmacy to manage and dispense its 340B Drugs;

1.3.    Covered Entity desires to contract with Walgreens to manage and dispense Covered Entity's 340B Drugs pursuant to Covered Entity's 340B Drug Program; and

1.4.    Walgreens agrees to manage and dispense Covered Entity's 340B Drugs pursuant to the terms and conditions of this Agreement.

1.5.    In consideration of the promises, covenants and agreements hereinafter set forth, Covered Entity and Walgreens hereby agree to the following terms and conditions:

### 2.    DEFINITIONS

2.1.    "**340B Drugs**" means drugs which are "covered outpatient drugs" as defined in Section 1927(k) of the Social Security Act, 42 USC 1396r-8(k)(2), and which are prescribed by an authorized medical provider affiliated with Covered Entity. All 340B Drugs shall be subject to the limiting definition of "covered outpatient drug" set forth in Section 1927(k) of the Social Security Act, 42 USC 1396r-8(k)(3).

2.2.    "**340B Drug Program**" means the Covered Entity's program to purchase and either dispense or arrange for the dispensing of 340B Drugs to Eligible Patients in accordance with Section 340B of the Public Health Service Act (the "**Act**").



2.4.    "**Average Wholesale Price**" or "**AWP**" means the Average Wholesale Price for each drug product in the database as defined by MediSpan or another nationally recognized source used by Walgreens.



*Walgreens*



2.6.    **"Covered Entity Location(s)"** means those individual Covered Entity Locations listed on the HRSA web-site pursuant to an executed enrollment or registration form which authorizes Covered Entities to contract with a licensed pharmacy to manage and dispense 340B Drugs. Covered Entity Locations shall only be eligible under this Agreement for so long as such locations are registered and identified as active in the HRSA 340B database.

2.7.    **"DHHS"** means the United States Department of Health and Human Services.



2.9.    **"HRSA"** means the Health Resources and Services Administration.



2.11.    **"Manufacturer"** means any pharmaceutical manufacturer of 340B Drugs purchased by Covered Entity and delivered to Walgreens via Supplier pursuant to the terms of this Agreement.

2.12.    **"NDC-11"** means a medication's unique 11-digit number containing: (i) the labeler code assigned by the Food and Drug Administration; (ii) the product code; and (iii) the package size of the pharmaceutical product.

2.13.    **"Non-Eligible 340B Drugs"** means drugs (based upon the NDC-11) that are not a 340B Drug, on the 340B Price File, and/or eligible for the 340B Drug Program.



    V1. 0 ©2016 Walgreen Co. All rights reserved.



**2.15.** "**Prescriber List**" means the list of prescribers eligible to write prescriptions for 340B Drugs under the terms of this Agreement and the 340B Drug Program.

**2.16.** "**Price File**" means the list of 340B Drugs and associated pricing available from the Supplier.

**2.20.** "**Supplier**" means the pharmaceutical manufacturer, supplier, or drug wholesaler that has entered into a written agreement with Covered Entity to provide 340B Drugs to Walgreens via a ship-to, bill-to arrangement.

**2.21.** "**Tax**" means any sales tax, imposition, assessment, excise tax or other government levied amount based on Walgreens' retail sales of prescriptions to Covered Entity's patients either on gross revenues or by transaction, whether such tax is designated a sales tax, gross receipts tax, retail occupation tax, value added tax, health care provider tax, transaction privilege tax, assessment, pharmacy user fee, or charge otherwise titled or styled. It includes any tax in existence or hereafter created whether or not the bearer of the tax is the retailer or consumer.

**3.      COVERED ENTITY RESPONSIBILITIES**





*Walgreens*



3.3.5.  Covered Entity will hold title to replacement 340B Drugs from the time Supplier fills an order from Walgreens made on behalf of Covered Entity until the time that Walgreens takes delivery of such drugs at the applicable Pharmacy Location, at which time title shall pass to Walgreens.



V1. 0 ©2016 Walgreen Co. All rights reserved.



4.    **WALGREENS' SERVICES AND RESPONSIBILITIES**



*Walgreens*



V1. 0 ©2016 Walgreen Co. All rights reserved.

*Walgreens*



5.    **REIMBURSEMENT AND BILLING**



    V1. 0 ©2016 Walgreen Co. All rights reserved.

*Walgreens*



6.     **AUDITS AND RECORDS**



V1. 0 ©2016 Walgreen Co. All rights reserved.



## 7.    TERM AND TERMINATION

7.1.    <u>Term</u>. The term of this Agreement shall commence on the Effective Date and shall continue in effect for a three (3)-year period thereafter, unless terminated earlier as provided herein. Upon expiration of the initial term, this Agreement shall be renewed automatically for successive one-year terms.

7.2.    <u>Implementation of this Agreement</u>. Covered Entity and Walgreens will establish a mutually agreed upon implementation schedule, which may include implementing 340B Drugs, Pharmacy Locations, Covered Entity Locations, and eligible prescribers on a rolling basis. The implementation schedule will be documented in an email or other written communication between the parties. Walgreens' obligation to provide services hereunder, including but not limited to 340B Pharmacy Services and Inventory Maintenance Services, will commence upon the applicable date(s) set forth in the implementation schedule established by the parties ("**Implementation Date(s)**"). Individual Pharmacy Locations will only be implemented after they are registered and identified as active in the HRSA 340B database. The parties further agree that 340B claims will not be processed retroactively for the period between the Effective Date and the applicable Implementation Date(s).

7.3.    <u>Termination</u>. Either party may immediately terminate this Agreement at any time upon written notice to the other party in the event any of the following occurs:

    V1. 0 ©2016 Walgreen Co. All rights reserved.

*Walgreens*

7.3.1.   The omission or the commission by the other party of any act or conduct for which its authority to provide services may be revoked or suspended by any governmental or administrative body (whether or not such suspension or revocation actually occurs);

7.3.2.   The other party becomes insolvent or bankrupt;

7.3.3.   It is determined by the terminating party that the other party lacks any federal, state, or local license, permit, or approval, including, without limitation, certificate of need approval required for the services and operations contemplated by this Agreement or that such services and operations or the arrangements set forth in this Agreement may be inconsistent with, or subject a party to, potential negative consequences under any provision of federal or state law regulating the services contemplated by this Agreement or the arrangements between the parties as set forth herein; or

7.3.4.   There is a material breach of the Agreement by the other party, which includes, but is not limited to, non-payment by Covered Entity of any required fees and/or reimbursement amounts within the time frames set forth in this Agreement.

7.4.   <u>Termination without Cause</u>. Notwithstanding any provision to the contrary, either party may terminate this Agreement at any time and without cause upon thirty (30) calendar days' prior written notice to the other party. In addition, either party may terminate any or all of the Pharmacy Locations at any time and without cause upon thirty (30) days' prior written notice to the other party. Termination of such locations shall not be deemed a termination of the remaining Pharmacy Locations or of this Agreement.

7.5.   <u>Suspension</u>. Either party may suspend this Agreement or any portion thereof (including but not limited to, any 340B Drugs, Pharmacy Locations, Covered Entity Locations, and eligible prescribers) at any time either: (i) without cause upon thirty (30) calendar days' prior written notice to the other party; or (ii) for material breach immediately upon written notice to the other party. Further, in the event any Pharmacy Location or Covered Entity Location is not properly registered and identified as active in the HRSA 340B database, such locations will be automatically suspended under this Agreement until such time as they are properly registered and identified as active. In the event the Agreement or any portion thereof is suspended, the parties shall document (in an email or other written communication) their mutual agreement to reinstate the Agreement, or portion thereof, prior to such reinstatement.



8.   **GENERAL PROVISIONS**

8.1.   <u>Advertising</u>. Neither party may advertise or use any trademarks, service marks, or symbols of the other party without first receiving the written consent of the party owning the mark and/or symbol with the following exceptions: (i) Covered Entity may use the name and the addresses of Walgreens in Covered Entity's informational brochures or other publications Covered Entity provides to its patients or

*Walgreens*

potential patients; and (ii) Walgreens may use Covered Entity's name, trademark, service mark, and/or symbols to inform patients and the general public that Walgreens is a pharmacy contracted for the dispensing of 340B Drugs to Eligible Patients. Any other reference to Walgreens in any Covered Entity materials must be pre-approved, in writing, by Walgreens.

8.2.     Assignment. Walgreens may assign this Agreement to any direct or indirect parent, subsidiary or affiliated company or to a successor company. Any permitted assignee will assume all obligations of Walgreens under this Agreement. No assignment will relieve Walgreens of responsibility for the performance of any obligations which have already occurred. This Agreement will inure to the benefit of and be binding upon Walgreens, its respective successors and permitted assignees. Covered Entity may not assign this Agreement without the prior written consent of Walgreens.

8.3.     Confidentiality. The parties agree to protect the confidentiality of each other's records and business information disclosed to them and not to use such information other than as necessary and appropriate in connection with performance of this Agreement. Each party acknowledges that disclosure of confidential information of the other would cause the other party irreparable harm and may, without limiting the remedies available for such breach, be enjoined at the instance of the harmed party. Upon termination of the Agreement, each party agrees to cease use of the other's information and to return it, or destroy it, as appropriate. The parties further agree that: (i) the negotiations of the terms of this Agreement and the entire Agreement are confidential; and (ii) they may disclose, on an as needed basis, the terms of this Agreement only to their employees (including employees of affiliates) and contractors, and as otherwise necessary and appropriate in connection with the performance of this Agreement. Nothing in this paragraph shall be construed to prevent either party from providing a copy of this Agreement to the Manufacturer or DHHS upon their request.

8.4.     Delegation. Walgreens may delegate or subcontract the performance of any obligation agreed to be performed by Walgreens hereunder to a related entity, contractor, or subcontractor, provided that as a condition precedent to such delegation or subcontract, all services or other activities performed by such entity, contractor or subcontractor shall be consistent with and comply with Walgreens' obligations under this Agreement.

8.5.     Dispute Resolution. The parties shall attempt to resolve any dispute or claim arising out of the interpretation of or performance under this Agreement through informal discussions. When a dispute arises, either party may submit a written complaint to the other party describing and proposing the manner of resolving that dispute. The party receiving that complaint shall respond by accepting, rejecting, or modifying that proposal, in writing, within thirty (30) calendar days upon receipt of such complaint. If the claim or dispute cannot be resolved through informal discussions, the claimant may bring a legal action in a court of competent jurisdiction to adjudicate its claim or to enforce or interpret any part of this Agreement. The prevailing party in a legal action will be entitled to recover reasonable attorneys' fees to be determined by the judicial body. The attorneys' fees will be in addition to the amount of judgment or any other relief obtained by the prevailing party.

8.6.     Enforceability. If any term or provision of this Agreement is held to be invalid, illegal, or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances, other than those to which it is held invalid or unenforceable, will not be affected or impaired thereby.

*Walgreens*

8.7.    Entire Agreement. This Agreement represents the entire understanding of the parties and supersedes any previous contract. Each party hereto warrants and represents that there are no other agreements or understandings between the parties, either oral or written, relating to the subject matter of this Agreement. Any amendments and/or modifications to this Agreement shall be in writing and will become effective and binding upon execution by authorized representatives of the parties hereto.

8.8.    Force Majeure. The performance by either party hereunder will be excused to the extent of circumstances beyond such party's reasonable control, such as flood, tornado, earthquake, or other natural disaster, epidemic, war, material destruction of facilities, fire, acts of God, etc. In such event, the parties will use their best efforts to resume performance as soon as reasonably possible under the circumstances giving rise to the party's failure to perform.

8.9.    Indemnification. Each party shall indemnify, defend, and hold harmless the other party from and against all third party claims, damages, causes of action, costs or expense, including court costs and reasonable attorneys' fees, which may arise as a result of the indemnifying party's negligent performance of or failure to perform, any term or condition of this Agreement. The obligation to indemnify shall survive termination of this Agreement regardless of the reason for termination.

8.10.    Independent Contractor. None of the provisions of this Agreement are intended to create, nor shall they be deemed or construed to create, any relationship between the parties hereto other than that of independent entities contracting solely for the purposes of effecting the provisions of this Agreement. Neither of the parties shall be construed to be the partner, co-venturer, or employee or representative of the other party.

8.11.    Notice. Any notice required or given under this Agreement shall be provided in writing sent by U. S. certified mail, return receipt requested, postage prepaid, or by overnight delivery service providing proof of receipt, to the addresses of the parties as set forth below:

NEIGHBORHOOD OUTREACH
ACCESS TO HEALTH
3634 N. DRINKWATER BLVD.
SCOTTSDALE, AZ 85251
ATTN: WENDY ARMENDARIZ
EXECUTIVE DIRECTOR

WALGREEN CO.
104 WILMOT ROAD, MS-1446
DEERFIELD, IL 60015
ATTN: 340B LEGAL
ROBERT ABILEZ, SENIOR COUNSEL

AND SEND VIA EMAIL TO:
HealthLawLegalNotices@Walgreens.com

COPY TO:
HONORHEALTH
8125 N. HAYDEN RD.
SCOTTSDALE, AZ 85258
ATTN: LEGAL DEPT

Each party may designate by notice any future or different addresses to which notices will be sent. Notices will be deemed delivered upon receipt or upon refusal to accept delivery.

8.12.    Patient Privacy and HIPAA Compliance. The parties recognize that each may be a healthcare provider and a covered entity within the meaning of the federal Health Insurance Portability and Accountability Act ("HIPAA"). The parties agree to protect and respect the patient's right to privacy and confidentiality concerning their medical and pharmaceutical records, and to protect all individually

*Walgreens*

identifiable health information as protected health information from misuse or disclosure, in compliance with all applicable state and federal law. Without limiting the generality of the foregoing, the parties agree to use patient-specific information: (i) only for permitted treatment, billing and related record-keeping purposes; or (ii) as otherwise permitted by law. In the event that any patient information created, maintained or transmitted in connection with this Agreement is to be transmitted electronically, the parties agree that they shall comply in all respects with the requirements of HIPAA governing electronic transmission of individually identifiable patient information. Failure by either party to abide by these requirements shall be a basis for immediate termination of this Agreement.

8.13.    Regulatory Compliance. Each party agrees to comply with applicable federal and state laws and regulations. Covered Entity and Walgreens mutually acknowledge that their intent in entering into this Agreement is solely to facilitate Covered Entity's 340B Drug Program. The services provided hereunder are only those necessary in order to fulfill this intent, and all financial arrangements established herein are mutually determined to represent either cost or fair market value for the items and services received. The parties expressly do not intend to take any action that would violate state or federal anti-kickback prohibitions, such as those appearing in Section 1128B of the Social Security Act, 42 USC Section 1320a-7b. Instead, it is the intention of the parties that this Agreement, and all actions taken in connection herewith, shall to the greatest extent possible be construed to be consistent with the regulatory requirements of the safe harbor for personal services and management contracts appearing in 42 CFR Section 1001.952(d) or health centers appearing in 42 CFR Section 1001.952(w). Both parties agree that they will neither knowingly resell nor transfer a 340B Drug to an individual who is not an Eligible Patient nor will they dispense 340B Drugs to any person whose prescription is reimbursable by a State Medicaid Agency.

8.14.    Signature Authority. Each party to this Agreement warrants that it has full power and authority to enter into this Agreement and that the person signing this Agreement on behalf of either party warrants that he or she has been duly authorized and empowered to enter into this Agreement.

8.15.    Waiver. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as or be construed to be a waiver of any subsequent breach thereof.

**IN WITNESS WHEREOF**, Covered Entity and Walgreens have executed and delivered this Agreement by their representatives duly authorized.

NEIGHBORHOOD OUTREACH ACCESS TO HEALTH

By: _____

Name: _____

Title: _____

Date: 4/13/16

WALGREEN CO.

By: _____

Name: Scott A. Schuler

Title: **DVP Contracting & Pricing**

Date: 4/18/16

Appr _____ 4.14.16
Pharmacy Services

*Walgreens*

Robert Ahdey

**Legal**

V1. 0 ©2016 Walgreen Co. All rights reserved.

*Walgreens*

**Exhibit A**
**Fee Schedule**



V1. 0 ©2016 Walgreen Co. All rights reserved.



V1. 0 ©2016 Walgreen Co. All rights reserved.

*Walgreens*

**Exhibit B**
**Pharmacy Locations**

| NO. | LOCATION NO. | ADDRESS | CITY | STATE | ZIP CODE |
|-----|--------------|---------|------|-------|----------|
| 1 | 3163 | 3420 N SCOTTSDALE RD | SCOTTSDALE | AZ | 85251 |
| 2 | 4138 | 7923 E MCDOWELL RD | SCOTTSDALE | AZ | 85257 |
| 3 | 4762 | 2435 E GREENWAY PKWY | PHOENIX | AZ | 85032 |
| 4 | 5890 | 11250 E VIA LINDA | SCOTTSDALE | AZ | 85259 |

          V1. 0 ©2016 Walgreen Co. All rights reserved.

**Exhibit C**
**Business Associate Addendum**

This Business Associate Addendum ("**Addendum**") is entered into by and between Covered Entity and Walgreen Co. ("**BA**") and is effective as of the Effective Date of Underlying Agreement (as defined below) ("**Addendum Effective Date**"). This Addendum shall be incorporated into and made a part of the Underlying Agreement.

Covered Entity and BA have entered into an agreement whereby BA provides administrative services related to patient eligibility determinations in addition to dispensing pharmaceutical products pursuant to that certain 340B Contract Pharmacy Services Agreement ("**Underlying Agreement**");

The parties acknowledge that the provision of administrative services related to patient eligibility determinations are services provided by BA outside the scope of BA's normal covered pharmacy operations function and this Addendum is limited to the provision of such services ("**Services**");

Pursuant to the terms of the Underlying Agreement, Covered Entity wishes to disclose certain information to BA, some of which may constitute Protected Health Information (as defined below), and the parties wish to establish satisfactory assurances that BA will appropriately safeguard this PHI; and

The purpose of this Addendum is to satisfy certain standards and requirements of the HIPAA Rules (as defined herein), including, but not limited to, those at 45 C.F.R. §§ 164.314(a), 164.502(e), and 164.504(e), as the same may be amended from time to time, to be in compliance with the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 ("**HIPAA**"), the Health Information Technology for Economic and Clinical Health Act, as incorporated in the American Recovery and Reinvestment Act of 2009 ("**HITECH Act**"), and the regulations promulgated thereunder, including the Standards for Privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and E ("**Privacy Rule**"), the Security Standards for the Protection of Electronic Protected Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and C ("**Security Rule**"), and the Notification of Breach of Unsecured Protected Health Information requirements at 45 C.F.R. Part 164, Subpart D ("**Breach Notification Rule**").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1.      Definitions. For the purposes of this Addendum, terms used, but not otherwise defined, shall have the meaning as those in 45 C.F.R. §§ 160.103, 164.304, 164.402, 164.501, and 164.504, and the following terms have the definitions set forth below:

        1.1.    "**Breach**" shall have the same meaning as the term "breach" at 45 C.F.R. § 164.402.

        1.2.    "**HIPAA Rules**" shall mean the Privacy Rule, the Security Rule, and the Breach Notification Rule collectively.

        1.3.    "**Individual**" shall mean the person who is the subject of the PHI and shall include a person who qualifies as a personal representative in accordance with 45 C.F.R. § 164.502(g).

1.4.    **"Protected Health Information"** or **"PHI"** shall have the same meaning as the term "protected health information" at 45 C.F.R. § 160.103, limited to the information created or received by BA from or on behalf of Covered Entity. PHI shall include Electronic Protected Health Information. Notwithstanding anything to the contrary in this Addendum, the term "PHI" as used in this Addendum shall not include any information that BA would otherwise be able to receive as a HIPAA covered entity in the patient's continuum of care.

1.5.    **"Secretary"** shall mean the Secretary of the United States Department of Health and Human Services or his or her designee.

1.6.    **"Security Incident"** shall have the same meaning as the term "security incident" at 45 C.F.R. § 164.304.

1.7.    **"Unsecured PHI"** shall have the same meaning as the term "unsecured protected health information" at 45 C.F.R. § 164.402.

2.    <u>BA Obligations</u>. The parties agree that BA shall:

2.1.    Not use or disclose PHI other than as permitted by this Addendum, the Underlying Agreement, the Privacy Rule, or as Required By Law;

2.2.    Use appropriate safeguards to prevent the use or disclosure of PHI other than as provided for by this Addendum. BA shall implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity and availability of Electronic PHI that it creates, receives, maintains, or transmits on behalf of Covered Entity. BA shall comply with the applicable requirements of Subpart C of Part 164 of the Security Rule;

2.3.    Limit any uses, disclosures, and requests for PHI to the minimum amount necessary to perform or fulfill a specific function required or permitted by this Addendum in accordance with the HIPAA Rules;

2.4.    Mitigate to the extent practicable, any harmful effect that is known to BA from a use or disclosure of PHI by BA in violation of this Addendum;

2.5.    Timely report to Covered Entity any use or disclosure of PHI of which BA becomes aware that is not provided for or allowed by this Addendum or the HIPAA Rules, including Breaches of Unsecured PHI that BA discovers as required by, and in the manner set forth at, 45 C.F.R. § 164.410, and any Security Incident of which BA becomes aware. The parties acknowledge and agree that this section constitutes notice by BA to Covered Entity of the ongoing existence and occurrence of attempted but Unsuccessful Security Incidents (as defined below) for which no additional notice to Covered Entity shall be required. "Unsuccessful Security Incidents" shall include, but are not limited to, pings and other broadcast attacks on BA's firewall, port scans, unsuccessful log-on attempts, denials of service and any combination of the above, so long as no such incident results in unauthorized acquisition, access, use, or disclosure of PHI;

2.6.     In accordance with 45 C.F.R. §§ 164.308(b)(2) and 164.502(e)(1)(ii), require any of its agents or subcontractors that maintain, create, receive, and/or transmit PHI on behalf of BA to agree, in writing, to the same restrictions, conditions and obligations with respect to the use and disclosure of PHI that apply to BA under this Addendum;

2.7.     Make available to Covered Entity such information in such form as Covered Entity may require to fulfill Covered Entity's obligations to provide an Individual with access to, amendment of, and an accounting of disclosures of PHI pursuant to 45 C.F.R. §§ 164.524, 164.526, and 164.528, respectively;

2.8.     Make available to the Secretary its internal practices, books and records relating to the use and disclosure of PHI received from, or created by, BA on behalf of Covered Entity, for purposes of determining Covered Entity's compliance with the HIPAA Rules; and

2.9.     To the extent BA is delegated to carry out any of Covered Entity's obligations under the Privacy Rule, comply with the requirements of the Privacy Rule that apply to Covered Entity in the performance of such delegated obligations.

3.     <u>Permitted Uses and Disclosures</u>. The parties agree that BA may:

3.1.     Use and disclose PHI to perform the Services provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity;

3.2.     Use PHI in its possession for its proper management and administration and to fulfill any of its present or future legal responsibilities;

3.3.     Use PHI in its possession to provide Data Aggregation services relating to the Health Care Operations of Covered Entity;

3.4.     Disclose PHI in its possession to third parties for the purpose of its proper management and administration or to fulfill any of its present or future legal responsibilities provided that: (i) the disclosures are Required By Law; or (ii) BA has received from the third party receiving the PHI reasonable assurances that the PHI will be held confidentially, that the PHI will only be used or further disclosed as Required By Law or for the purpose for which it was disclosed to the third party, and that the third party will notify BA of any instances of which it is aware in which the confidentiality of the information has been breached; or

3.5.     De-identify PHI and use and disclose the de-identified information, provided that the de-identification conforms to the requirements of 45 C.F.R. § 164.514(b) and use the de-identified information for any purpose.

4.     <u>Obligations of Covered Entity</u>. With respect to the use and/or disclosure of PHI by BA, Covered Entity shall:

4.1.     Notify BA, in writing and in a timely manner, of any limitations in its notice of privacy practices, to the extent that such limitations may affect BA's use or disclosure of PHI;

*Walgreens*

4.2.     Notify BA, in writing and in a timely manner, of any change in, or revocation of, consent or authorization by an individual to use or disclose PHI, to the extent that such change may affect BA's permitted or required use or disclosure of the PHI;

4.3.     Notify BA, in writing and in a timely manner, of any restriction to the use and/or disclosure of PHI to which Covered Entity is required, or has agreed in accordance with 45 C.F.R. § 164.522 to the extent such restriction may affect BA's use or disclosure of PHI;

4.4.     Have entered into a "Business Associate Agreement", as required by 45 C.F.R. § 164.502(e) with any third parties to which Covered Entity directs and authorizes BA to disclose PHI; and

4.5.     Only disclose to BA the minimum necessary PHI for BA to provide the Services to Covered Entity.

5.     <u>Term</u>. This Addendum shall become effective on the effective date of the Underlying Agreement and shall expire when all of the PHI provided by Covered Entity to BA is destroyed or returned to Covered Entity pursuant to Section 7.

6.     <u>Termination</u>. Notwithstanding any other provision under the Underlying Agreement, the parties agree that this Addendum may be terminated without penalty at any time by either Party if the other Party violates a material obligation under this Addendum, provided, however, the other Party is afforded thirty (30) days opportunity to cure the breach and the other Party does not cure the breach or end the violation within said thirty (30) days. If the parties mutually agree that cure is not possible, this Addendum shall terminate immediately.

7.     <u>Return or Destruction of PHI</u>. Upon termination or expiration of this Addendum, BA shall return to Covered Entity any and all PHI received from, or created by BA on behalf of, Covered Entity that is maintained by BA in any form whatsoever, including any copies or replicas. If returning the PHI to Covered Entity is not feasible, BA shall destroy any and all PHI maintained by BA in any form whatsoever, including any copies or replicas. Should the return or destruction of the PHI be determined by BA to be not feasible, the parties agree that the terms of this Addendum shall extend to the PHI, and any further use or disclosure of the PHI by BA shall be limited to that purpose which renders the return or destruction of the PHI infeasible.

8.     <u>Amendment to Comply with Law</u>. The parties acknowledge that state and federal laws relating to data security and privacy are rapidly evolving and that amendment of this Addendum may be required to provide for procedures to ensure compliance with such developments. The parties agree to take such action as is necessary to comply with the standards and requirements of the HIPAA Rules and other applicable laws relating to the security or confidentiality of PHI. Upon either Party's request due to a change in the law, the other Party agrees to promptly enter into negotiations concerning the terms of an amendment to this Addendum.

9.     <u>Independent Contractors</u>. In the performance of the Services and the obligations under this Addendum, the parties acknowledge and agree that each Party is at all times acting and performing as an independent contractor and at no time shall the relationship between the parties be construed as a partnership, joint venture, employment, principal/agent, or master/servant relationship.

*Walgreens*

10.    Interpretation. Any ambiguity in this Addendum shall be resolved in favor of a meaning that permits Covered Entity and BA to comply with the HIPAA Rules. The provisions of this Addendum shall prevail over any provisions in the Underlying Agreement between the parties that may conflict or appear inconsistent with any provision of this Addendum.

11.    No Third Party Beneficiaries. Nothing express or implied in this Addendum is intended to confer, nor shall anything herein confer, upon any person other than Covered Entity, BA, and their respective successors or assigns, any rights, remedies, obligations, or liabilities whatsoever.

12.    Notice. Any notice required under this Addendum shall be delivered in writing to BA or Covered Entity, as appropriate, and submitted to the address indicated below:

> For BA:                Walgreens Privacy Office
>                        200 Wilmot Road, MS 9000
>                        Deerfield, Illinois 60015
>                        Phone: (847) 236-6518
>                        Fax: (847) 236-0862
>                        Email: privacy.office@walgreens.com
>                        Attn: Privacy Officer
>
> For Covered Entity:    The address set forth in the Underlying Agreement

13.    Regulatory References. A reference in this Addendum to a section in the HIPAA Rules means the section in effect or as amended and for which compliance is required at the time.