UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANOFI-AVENTIS U.S. LLC,<br><br>   Plaintiff,<br><br> v.<br><br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES, et al.,<br><br>   Defendants. | Civil Action No. 24-1603 (DLF) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

**BACKGROUND** ........................................................................................................................... 1

**LEGAL STANDARD** ................................................................................................................. 5

**ARGUMENT** ................................................................................................................................ 6

**CONCLUSION** .......................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**CASES**

*Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*,
573 F. Supp. 3d 78 (D.D.C. 2021) ................................................................................................ 12

*Am. Fed'n of Gov't Emps. v. Dep't of Com.*,
907 F.2d 203 (D.C. Cir. 1990) ...................................................................................................... 11

*Anand v. Dep't of Health & Hum. Servs.*,
Civ. A. No. 21-1635 (CKK), 2023 WL 3600140 (D.D.C. May 23, 2023) .................................... 10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................................ 5

*AquAlliance v. Nat'l Oceanic & Atmospheric Admin.*,
Civ. A. No. 17-2108 (CRC), 2019 WL 2451687 (D.D.C. June 12, 2019) .................................... 13

*Ayuda, Inc. v. Fed. Trade Comm'n*,
70 F. Supp. 3d 247 (D.D.C. 2014) ................................................................................................ 10

*Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*,
628 F. Supp. 3d 266 (D.D.C. 2022) ...................................................................................... 6, 9, 10

*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) ........................................................................................................ 5

*Keeping Gov't Beholden, Inc. v. Dep't of Just.*,
Civ. A. No. 17-1569 (FYP), 2021 WL 5918627 (D.D.C. Dec. 13, 2021) .................................... 10

*People for the Am. Way v. Dep't of Just.*,
451 F. Supp. 2d 6 (D.D.C. 2006) .................................................................................................. 10

*Wolf v. CIA*,
569 F. Supp. 2d 1 (D.D.C. 2008) .................................................................................................. 10

*Wright v. FBI*,
Civ. A. No. 18-0687 (TSC), 2024 WL 4263867 (D.D.C. Sept. 23, 2024) .................................... 10

**STATUTES**

5 U.S.C. § 552 .................................................................................................................................. 6

**RULES**

Fed. R. Civ. P. 56 ......................................................................................................................... 1, 5

Defendants the Department of Health and Human Services (the "Department") and the Health Resources and Services Administration ("HRSA" or the "Administration"), through undersigned counsel, respectfully move for summary judgment under Federal Rule of Civil Procedure ("Rule") 56.

## BACKGROUND

This is a case under the Freedom of Information Act ("FOIA"). On July 21, 2021, Plaintiff submitted a request for the following records:

1. In HRSA's May 17 letter to Sanofi, HRSA referred to "an analysis of the complaints HRSA has received from covered entities" about Sanofi's 340B integrity initiative. Sanofi is seeking copies of (a) all such complaints, and (b) any emails, memoranda, or documents reflecting HRSA's analysis of such complaints.

2. Copies of, or documents memorializing, any other communications from covered entities to HRSA regarding Sanofi's participation in the 340B program that are not covered by request #1.

3. In HRSA's May 17 letter to Sanofi, HRSA stated that "Sanofi's actions have resulted in overcharges." Sanofi is seeking copies of all documents calculating or reflecting any purported overcharges.

4. In HRSA's May 17 letter to Sanofi, HRSA stated that Sanofi's policy "places restrictions on 340B pricing to covered entities that dispense medication through pharmacies, unless the covered entities provide claims data to a third-party platform." Sanofi is seeking documents reflecting, analyzing, or otherwise assessing the burden imposed on covered entities of complying with Sanofi's policy.

5. All emails, memoranda, or other documents related to the Sanofi policy referred to in HRSA's May 17 letter to Sanofi from July 2020 to the present, including documents that post-date May 17, 2021.

6. All emails, memoranda, or other documents related to the formulation of HRSA's May 17 letter to Sanofi, including documents that post-date May 17, 2021.

7. The guidance promulgated at 75 Fed. Reg. 10,272, 10,278 (Mar. 5, 2010) instructs that when covered entities discover drug diversion or duplicate discounting at contract pharmacies, they must "take immediate remedial action to assure compliance and notify [the agency] about such compliance

        problems and actions taken to remedy those problems." Sanofi is seeking copies of all emails, memoranda, or other documents reflecting those notifications and actions taken since March of 2010, and any analysis or response from HRSA about such notifications and actions taken.

8. The guidance promulgated at 75 Fed. Reg. 10,272, 10, 278-79 (Mar. 5, 2010) instructs that covered entities using contract pharmacies must certify compliance with various regulatory requirements. Sanofi is seeking copies of all emails, memoranda, or other documents reflecting those certifications (or re-certifications) since March of 2010, and any analysis or response from HRSA about such certifications or re-certifications.

9. In Advisory Opinion 20-06 on Contract Pharmacies under the 340B Program (Dec. 30, 2020), the general counsel "conclude[d] that to the extent contract pharmacies are acting as agents of a covered entity, a drug manufacturer in the 340B Program is obligated to deliver its covered outpatient drugs to those contract pharmacies and to charge the covered entity no more than the 340B ceiling price for those drugs." Sanofi is seeking all emails, memoranda, contracts or other documents reflecting whether (a) contract pharmacies act as agents of covered entities, and (b) covered entities maintain title to drugs shipped to contract pharmacies.

FOIA Req. (July 21, 2021), ECF Nos. 1-2, 18-4.

On July 22, 2021, Defendants sent Plaintiff an acknowledgment letter and assigned the FOIA request number 21F218. Suppl. May Decl. ¶ 11, ECF No. 28-2; *see also* Acknowledgement, ECF No. 18-5. On October 19, 2021, Defendants sent Plaintiff an email explaining "there are hundreds of contract pharmacies, and each contract will have to be sent to each respective pharmacy for submitter review. This process will take several months to complete . . . If you would still like to see contracts, would you be okay with receiving one or two of them, instead of all? My assumption is that the contract will look fairly uniform except for the names/identifying information unique to each pharmacy." Suppl. May Decl. ¶ 12; *see also* Email from Defs. (Oct. 19, 2021, at 9:51 a.m.), ECF No. 18-6.

Plaintiff did not agree to narrow the request but did state that they would be willing to reconsider after reviewing one to two contracts. Suppl. May Decl. ¶ 13; *see also* Email from Pl. (Oct. 19, 2021, at 1:04 p.m.), ECF No. 18-6. On December 6, 2021, Defendants produced 8,127

2

pages satisfying items one through eight of Plaintiff's FOIA request, and almost all of item nine. Suppl. May Decl. ¶ 14. On December 8, 2021, Defendants sent Plaintiff a production letter stating that it had reviewed two contracts, comprising of forty-three pages total, and was redacting the pages in their entirety under Exemption 4. Suppl. May Decl. ¶ 15; *see also* Letter from Defs. (Dec. 8, 2021), ECF No. 18-7. Defendants explained in an email to Plaintiff that they redacted the contracts in full "because the contracts had clauses that prohibited release of any portions of the contracts except to the parties to the contracts." Email from Defs. (Dec. 9, 2021, at 10:38 a.m.), ECF No. 18-8.

Plaintiff filed an administrative appeal on January 4, 2022, based on the Exemption 4 withholdings only. Suppl. May Decl. ¶ 16; *see also* Pl.'s Appeal (Jan. 4, 2022), ECF No. 18-9. The FOIA office for the Administration received notice of Plaintiff's appeal from the FOIA office for Health and Human Services on January 19, 2022. Suppl. May Decl. ¶ 17. Before the appeal was resolved, Plaintiff filed suit in this Court on May 31, 2024. *See generally* Compl., ECF No. 1.

Almost immediately after filing suit, Plaintiff sought to set a schedule for summary judgment briefing. Plaintiff stated that the dispute was ripe, that there was no indication that Defendants intended to change their position, and that there was no indication that the submitters of the pharmacy contracts would consent to their release. *See* Jt. Status Rep. at 3 (Sept. 6, 2024), ECF No. 17.

Defendants, to the contrary, sought to engage in rolling joint status reports, as is customary in this District. *Id.* at 4. Defendants explained, contrary to Plaintiff's belief, that either Defendants or the submitters could change their positions, which would obviate the need for summary judgment briefing altogether and save the parties, as well as the Court, from spending their limited resources on unnecessary piecemeal litigation. *Id.* In fact, Defendants were correct, as one of the

two contracts originally withheld was released in full and the other in part, revealing all of the information Plaintiff is interested in. *See* Walgreens Contract, ECF Nos. 23-2, 24-2; Pole Mountain Contract, ECF Nos. 23-3, 24-3.

Plaintiff moved for summary judgment on October 3, 2024. *See* Pl.'s Mot. Summ. J., ECF No. 18. In that motion, for the first time, Plaintiff indicated that it wanted Defendants to search for, process, and produce all relevant pharmacy contracts in their possession, not just the two that Defendants had originally proposed as samples. *See* Pl.'s Mot. Summ. J. at 22-23, ECF No. 18-1. In their cross motion and opposition, Defendants clarified that there were not really hundreds of contracts but thousands, and it would take more than a decade to fully process Plaintiff's request. *See* Defs.' Cross Mot. Partial Summ. J. at 22, ECF No. 20; May Decl. ¶ 36, ECF No. 20-2.

Defendants have repeatedly represented to Plaintiff that they are willing and interested in working with Plaintiff to fulfill its request despite its overbreadth. May Decl. ¶ 33, ECF No. 20-2. ("While the FOIA office is willing to work with Plaintiff to produce the requested records, the scale and timeframe suggested by Plaintiff is unattainable."); *id.* ¶ 34 ("If Plaintiff were willing to narrow their request, it would greatly help both parties process and receive the contracts in a timely manner.").

Indeed, on Monday, November 25, 2024—in the middle of briefing and before re-releasing one of the two sample contracts after engaging in the submitter process—Defendants asked Plaintiff if it would be amenable to meet and confer. Defendants explained to Plaintiff that they hoped to come to an agreement about a reasonable number of contracts and a realistic time frame for producing them. Defendants further stated that a meet and confer would be more productive for all parties—and the Court—than the path that the parties are currently on. Plaintiff refused.

4

On Saturday, December 28, 2024, again, Defendants contacted Plaintiff and asked if Plaintiff would be amenable to narrowing the request. Defendants proposed processing twenty-five contracts and explained that such a number would still allow Plaintiff to get enough information to fulfill the purpose of the request without overburdening the Administration. Defendants also asked Plaintiff if it had another number in mind. Plaintiff responded on Tuesday, January 7, 2025, that it would not narrow the request.

Because the parties cannot agree to narrow the last remaining item of Plaintiff's FOIA request, Defendants are moving for summary judgment because to process the request as is would be unduly burdensome for Defendants. If the Court does not grant summary judgment outright, then the Court should significantly narrow the scope of the request to allow Defendants to process it under circumstances that are consistent with the "reasonably describes" requirements of FOIA.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* Although all inferences are taken in a light most favorable to the nonmoving party, a party opposing summary judgment may not rest on allegations or denials from its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 255-56.

In a FOIA case, summary judgment may be granted "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citation omitted).

**ARGUMENT**

A request must reasonably describe the records sought. 5 U.S.C. § 552(a)(3)(A). The D.C. Circuit has identified three ways in which a request can fail the "reasonably describes" requirement. *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 271-72 (D.D.C. 2022). "First, vague words and descriptions." *Id.* A request must allow agency staff "to determine precisely which records are being requested," and a request that "vaguely describes the requested documents does not suffice." *Id.* "Second, seeking difficult to locate records." *Id.* at *4. This analysis depends on whether agency employees can locate responsive records "with a reasonable amount of effort." *Id.* (quoting *Truitt*, 897 F.2d at 545 n.36). Otherwise, an agency need not respond. *Id.* "Third, overly burdensome post-search efforts." *Id.* "Even when a request reasonably describes documents, the attendant burden of production can be so heavy that the agency need not respond." *Id.*

Here, the last item of Plaintiff's FOIA request fails to reasonably describe the records sought because of the second and third reasons. Defendants understand that Plaintiff seeks: "anonymized contract terms between covered entities and third-party contract pharmacies that reflect (1) whether contract pharmacies act as agents of covered entities, and (2) whether covered entities maintain title over 340B-priced drugs shipped to contract pharmacies." Pl.'s Mot. Summ. J. at 6, 9, 10, ECF No. 18-1. However, as explained by the supplemental May declaration, it would be unreasonably burdensome to search for and process records in response to this request.

Regarding the search, the Administration generally conducts 200 covered entity audits a year—roughly 150 of those audits include covered entities that have contract pharmacies. Suppl. May Decl. ¶ 25, ECF No. 28-2. The Administration estimates that those pharmacies have five contracts on average in their files. *Id.* Based on these estimates, the Administration believes this request could include approximately 7,500 contracts if the cutoff date is July 28, 2021. *Id.* Each

6

contract could have upwards of twenty pages or more. *Id.* All contracts are housed in audit files of each audited covered entity in the Administration's online document management system. *Id.*

The prior estimate given to Plaintiff of hundreds of contracts was based on a misunderstanding on the part of the FOIA office. *Id.* ¶ 26. The office responsible for locating the responsive items and transmitting them to the FOIA office is the Office of Pharmacy Affairs, and it noted that there are approximately 200 audits a year, and of those, about 150 of them contain contracts within the audit file. *Id.* The FOIA office for the Administration mistakenly relayed an estimate of hundreds of contracts when it is actually around 150 contracts per audit year. *Id.*

The Office of Pharmacy Affairs will need to gather all of the contracts to provide them to the Administration's FOIA office. *Id.* ¶ 27. This process includes five steps for the Office of Pharmacy Affairs personnel: (1) pull a list of audits for years 2012 through 2021 at ten minutes per list; (2) review the lists to determine number of entities with potentially responsive records at thirty minutes per list; (3) search Office of Pharmacy Affairs Information System Compliance Module to determine how many contracts per audited entity at thirty minutes per audit; (4) download each contract into a separate location at twenty minutes per contract; and, finally, (5) quality assurance review of each contract at one minute per page. *Id.*

Depending on the search cutoff date, this search will take between 4,507 and 5,484 hours to complete the record search and to provide the FOIA office for the Administration with approximately 75,000 to 195,000 pages. *Id.* ¶ 29. After the search is completed, however, the Administration will then need to process the estimated 75,000 to 195,000 pages. *Id.* ¶ 30. Since all of the records are contracts, the Administration is obligated to coordinate pre-disclosure notices with the submitters of the records. *Id.*

7

A person who submits records to the government may designate part or all the information in such records that they may consider exempt from disclosure under Exemption 4 of FOIA. *Id.* ¶ 31. The designation must be in writing. *See* 45 C.F.R. § 5.41. The submitter has ten working days from receipt of the notice to object to disclosure of any part of the records and to state all bases for its objections. Suppl. May Decl. ¶ 31. The Administration will consider all bases that have been stated in a timely manner by the submitter. *Id.* If the Administration decides to disclose the records, it will notify the submitter in writing. *Id.* This notice will briefly explain why the agency did not sustain the submitter's objections. *Id.* The Administration will include with the notice a copy of the records about which the submitter objected, as the agency proposes to disclose them. *Id.* The notice will state that the Administration intends to disclose the records five working days after the submitter receives the notice unless a U.S. District Court orders the agency not to release them. *Id.*

The FOIA office for the Administration will need to draft and send a pre-disclosure notice to each party named in the contracts at issue. *Id.* ¶ 32. The average time to draft pre-disclosure notice letters, prepare, and send them to the submitters is approximately one hour per pre-disclosure notice. *Id.* The processing time includes locating points-of-contact for each contract party (the submitters), drafting a pre-disclosure notice letter that explains the pre-disclosure notice process and the instructions for the submitter to use when reviewing the contracts for confidential commercial information, and preparing a transmittal email for each submitter that includes the pre-disclosure notice letter and the contract for review. *Id.* Using July 28, 2021, as the search cut-off date, the Office of Pharmacy Affairs approximates there will be nearly 7,500 contracts that may be responsive, then the Administration will need around 15,000 hours to draft pre-disclosure notice packages for all submitters' contracts. *Id.* Based on a 40-hour work week, it would take the FOIA office for the Administration approximately seven and one-quarter years to complete the pre-

disclosure notice packages, even if the full eight-hour workday was devoted to only processing this litigation. Presently, the Administration does not have any additional resources to dedicate to this FOIA litigation. *Id.*

Once the Administration receives a submitter's response to the pre-disclosure notice, the Administration will need to review those responses and see if it agrees with the submitter's proposed redactions. *Id.* ¶ 33. If the Administration agrees with the redactions, it will apply redaction markings to each section of the contract the submitter highlighted as confidential commercial information. *Id.* The Administration can review approximately 30-50 pages per hour. *Id.* If the average contract is approximately 20 pages, then the Administration could review and apply redactions in approximately 45 minutes per contract. *Id.* To apply redactions to approximately 7,500 contracts would take 337,000 minutes, 5,625 hours, 703 workdays, or approximately two and three-quarter work years. *Id.*

Therefore, to satisfy the full scope of the request, the Administration estimates approximately thirteen and one-half work years to complete. *Id.* The Administration further estimates this could cost more than $1,592,487 in salary at the Washington, DC locality of $117,962 per year, which does not account for the significant costs of benefits, overhead costs, and does not account for pay increases, as the employee climbs the GS scale. *Id.* ¶ 35. This would be in addition to the hundreds of other FOIA request that the Administration receives with only five full-time equivalent employees to process. *Id.* ¶ 36; *see also Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272 ("Agencies respond to FOIA requests at taxpayer expense, and burdensome requests hinder an agency's ability to respond to other FOIA requests and to conduct its other statutory responsibilities. An agency should not need to spend so much time on one request (or multiple related requests from one requester) at the expense of its more critical duties.").

Simply put, based on the numbers alone, this is an unreasonable task for the Administration, and the case law supports Defendants' motion. *Cf. Wright v. FBI*, Civ. A. No. 18-0687 (TSC), 2024 WL 4263867, at *2-3 (D.D.C. Sept. 23, 2024) (agreeing searches that would take approximately 154,526 hours and would cost over $3.9 million, or would take 88,570 hours and cost over $2.2 million, would be unduly burdensome); *Anand v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-1635 (CKK), 2023 WL 3600140, at *4 (D.D.C. May 23, 2023) (collecting cases and holding that a search requiring 28 years and millions of dollars "to search for records responsive to" plaintiff's FOIA request imposed undue burden); *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272-74 (D.D.C. 2022) (finding request unreasonable that would take 8,151 hours, which equated to about 1,018 workdays or about two years and nine months); *Keeping Gov't Beholden, Inc. v. Dep't of Just.*, Civ. A. No. 17-1569 (FYP), 2021 WL 5918627, at *3, 7 (D.D.C. Dec. 13, 2021) (finding it unduly burdensome to process a request that would take approximately 1,059,990 minutes (or 17,666 hours) of searching); *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275-77 (D.D.C. 2014) (upholding agency's refusal to produce records when redaction process "would take more than 8,000 hours"); *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (finding a search of microfilm that would take an estimated 3,675 hours and cost $147,000 to be unreasonably burdensome); *People for the Am. Way v. Dep't of Just.*, 451 F. Supp. 2d 6, 13 (D.D.C. 2006) (finding a search unreasonably burdensome where the agency provided an affidavit explaining that compliance would require the agency to devote 25,000 hours to manually searching all 44,000 files encompassed in the request).

Further, even if the numbers alone do not support summary judgment for Defendants, when considering Plaintiff's purpose in submitting the FOIA request, it becomes apparent that Plaintiff's request is unreasonably burdensome. *Cf. Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 273

10

(considering the purpose of the FOIA request in deciding whether the request was unreasonably burdensome); *Am. Fed'n of Gov't Emps. v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (same).

Plaintiff is drug manufacturer that participates in the 340B drug pricing program. *See* Compl. ¶ 15, ECF No. 1. In other words, Plaintiff agrees to sell outpatient drugs at discounted prices to health care organizations that care for many uninsured and low-income patients. *Id.* This allows covered entities to stretch limited federal resources to reduce the price of outpatient pharmaceuticals for patients and expand health services to the patients and communities they serve. Covered entities use 340B savings to provide, for example, free care for uninsured patients, offer free vaccines, provide services in mental health clinics, and implement medication management and community health programs.

"To distribute 340B-priced drugs to patients, covered entities often contract with outside pharmacies." Compl. ¶ 16. Plaintiff alleges after a guidance was issued in 2010, "the use of contract pharmacies skyrocketed, so too did waste and abuse." *Id.* ¶ 17. According to Plaintiff, covered entities "violate Section 340B's prohibition on diversion by transferring title over 340B-priced drugs to contract pharmacies." *Id.* ¶ 19. "On information and belief, it is general industry practice that covered entities do not maintain title over 340B-priced drugs shipped to contract pharmacies using the replenishment model." *Id.* ¶ 27. "Rather, on information and belief, it is general industry practice for contract pharmacies to obtain title to 340B-priced drugs." *Id.*

Moreover, according to Plaintiff, "on information and belief, it is general industry practice for contract pharmacies to act as independent contractors when they receive 340B-priced drugs," and "[o]n information and belief, contract pharmacies do not act as agents of covered entities when they receive 340B-priced drugs." *Id.* ¶ 28. "On information and belief, [the Administration] has

11

never sanctioned a covered entity for not maintaining title to 340B-priced drugs shipped to contract pharmacies." *Id.* ¶ 29. Plaintiff further alleges, the Administration "is not currently investigating any covered entities for not maintaining title to 340B-priced drugs shipped to contract pharmacies." *Id.* ¶ 30.

Thus, because of these concerns, Plaintiff submitted the request at issue and later clarified that it is seeks: "anonymized contract terms between covered entities and third-party contract pharmacies that reflect (1) whether contract pharmacies act as agents of covered entities, and (2) whether covered entities maintain title over 340B-priced drugs shipped to contract pharmacies." Pl. Mot. Summ. J. at 6, 9, 10, ECF No. 18-1.

That said, to fulfill its purpose of ascertaining enough contracts to extrapolate an industry practice, Plaintiff does not need 7,500 contracts. And although Plaintiff stated in its reply in support of its motion for summary judgment that it is "entitled" to all contracts and that the contracts would "help [Plaintiff] both defend itself against the flood of claims that it is somehow illegally restricting the distribution of 340B drugs to contract pharmacies, and consider asserting diversion claims against covered entities," Pl.'s Reply Supp. Mot. Summ. J. at 16-17, ECF No. 23, it is most certainly not entitled to impose an unreasonable burden on the taxpayer in contravention of FOIA.

As explained in Defendants' cross motion for partial summary judgment, whether Plaintiff receives 20 contracts in total, 200, or 2,000, it will likely not make a difference to Plaintiff's stated purpose. But for Defendants—a government agency with scarce resources trying to keep up with the demands of FOIA—it would make a huge difference. *Cf. Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 79 (D.D.C. 2021) ("Court dockets in this district overflow with Freedom of Information Act [ ] matters. Many of those cases seek reams of records, requiring massive efforts from defendant agencies."); *AquAlliance v. Nat'l Oceanic & Atmospheric Admin.*,

12

Civ. A. No. 17-2108 (CRC), 2019 WL 2451687, at *6 (D.D.C. June 12, 2019) ("It is common knowledge that many agencies contend with a massive FOIA backlog."); *see also* LCvR 16.3(b), cmt. ("A significant portion of the nation's FOIA actions are pending in this Court.").

The commonsense thing for Plaintiff to have done would have been to narrow its request to a manageable scope. Defendants have expressed their interest in working with Plaintiff. *See* May Decl. ¶¶ 33-34, ECF No. 20-2. Defendants have tried numerous times to work with Plaintiff to narrow the request to be reasonable. Suppl. May Decl. ¶¶ 21-23, ECF No. 28-2. Plaintiff refused. Thus, Defendants have no other option but to move for summary judgment. And as explained above, if the Court does not grant summary judgment outright, then the Court should narrow the scope of Plaintiff's request such that it complies with the "reasonably describes" requirements of FOIA.

## CONCLUSION

The Court should grant Defendants motion for summary judgment for the reasons above.

Date:   January 31, 2025                              Respectfully submitted,

                                                     EDWARD R. MARTIN, Jr., D.C. Bar #481866
                                                     United States Attorney

                                                     BRIAN P. HUDAK
                                                     Chief, Civil Division

                                            By:      */s/ Sam Escher*
                                                     SAM ESCHER, D.C. Bar #1655538
                                                     Assistant United States Attorney
                                                     601 D Street, NW
                                                     Washington, DC 20530
                                                     (202) 252-2531
                                                     Sam.Escher@usdoj.gov

                                                     *Attorneys for United States of America*